THE PEOPLE ex rel. William Mooney

*v.*

WILLIAM F. HUTCHINSON.

*Opinion filed April 29, 1898.*

1. STATUTES—*in construing a statute the presumption is in favor of its constitutionality.* In construing a statute the presumption is in favor of its constitutionality, and it will be set aside only in case it clearly infringes the constitution.

2. SAME—*whether law is just or unjust does not control its constitutionality.* A statute cannot be held unconstitutional because of unjust differences not prohibited by the constitution and within the legislative discretion; nor can a law be sustained because it is wise and just, if there is an absence of power to enact it.

3. SAME—*application of maxim "expressio unius est exclusio alterius."* Where a law is in the affirmative that a thing shall be done by certain persons or in a certain manner, the affirmative matter, upon the maxim *"expressio unius est exclusio alterius,"* carries a negative that it shall not be done by other persons or in another manner.

4. CONSTITUTIONAL LAW—*rules used in construing statutes are used in construing constitutions.* The general principles governing the construction of statutes apply in the construction of constitutions.

5. SAME—*absence of negative words is not conclusive that no limitation is intended.* The use of negative words by the constitution with reference to a legislative power is conclusive of an intent to limit such power, but an absence of such words is not conclusive that no limitation was intended.

6. SAME—*limitation on exercise of power implied from words of regulation.* A power given the legislature in general terms, without regulation, may be exercised in any manner chosen by the legislature; but where the constitution fixes the time and mode of exercising a particular power, a limitation against other times and modes is necessarily implied. (WILKIN, J., dissenting.)

7. SAME—*special provision relating to particular subject controls.* A special provision relating to a particular subject controls that subject, although there may be a general provision under which such subject would be included.

8. SAME—*power to apportion State into Senatorial districts—where derived.* Section 6 of article 4 of the constitution, providing that "the General Assembly shall apportion the State every ten years," etc., into Senatorial districts, is creative in its nature, and controls the matter of such apportionment as against the general grant of legislative power. (WILKIN, J., dissenting.)

9. SAME—*the maxim "expressio unius est exclusio alterius" applies to section 6 of article 4 of constitution.*    Section 6 of article 4 of the constitution, providing for the apportionment of the State into Senatorial districts, affirmatively fixes the time for exercising the power thereby conferred, and contains an implication that such power shall not be exercised at any other time.    (WILKIN, J., dissenting.)

10. SAME—*legislature can apportion State but once after each Federal census.*    Section 6 of article 4 of the constitution creates a continuing power, under which the legislature may apportion the State into Senatorial districts after each Federal census; but that power once exercised is final, and excludes another apportionment until after the succeeding census.    (WILKIN, J., dissenting.)

11. SAME—*Apportionment act of 1898 is unconstitutional.*    The Senatorial Apportionment act of 1898 (Laws of 1898, p. 3,) is unconstitutional and void, as the passage of the Apportionment act of 1893, based on the Federal census of 1890, exhausted the power of the legislature to again apportion the State into Senatorial districts until after the Federal census of 1900.    (WILKIN, J., dissenting.)

ORIGINAL petition for *mandamus.*

MOLONEY & SCOFIELD, for petitioner:

Where a particular construction has been generally accepted as correct, and especially when this has occurred contemporaneously with the adoption of the constitution and by those who had an opportunity to understand the intention of the instrument, it is not to be denied a strong presumption exists that the construction rightly interprets the intention.    Black's Interpretation of Laws, 31, 32; Cooley's Const. Lim. 82; *Martin* v. *Hunter's Lessee,* 1 Wheat. 304; *Stuart* v. *Laird,* 1 Cranch, 299; *United States* v. *Halstead,* 10 Wheat. 51; *Miner* v. *Happerset,* 21 Wall. 162; *Cohens* v. *Virginia,* 6 Wheat. 364; *Ogden* v. *Saunders,* 12 id. 290; *McPherson* v. *Blacker,* 146 U. S. 1.

The first census in the United States was taken in 1790, since which time it has been repeated regularly every ten years.    Of this the court will take judicial notice.    *People* v. *Thompson,* 155 Ill. 451; *State* v. *Cunningham,* 81 Wis. 178; *Parker* v. *State,* 133 Ind. 178.

In order to arrive at the reason and purpose of the constitution it is permissible to consult the debates and pro-

ceedings of the constitutional convention which formed the constitution; but it must be remembered that these are never of binding force and never of more than persuasive value. The courts are at liberty to avail themselves of any light derivable from such sources, but are not bound to adopt it as the sole ground of their decision. Black's Interpretation of Laws, p. 30; *Springfield* v. *Edwards*, 84 Ill. 626; *Coutant* v. *People,* 11 Wend. 511; *People* v. *May,* 9 Colo. 80; *People* v. *Gies,* 25 Mich. 83; *Taylor* v. *Taylor,* 10 Minn. 107.

Where the words employed, when taken in their ordinary, natural signification and the order of their grammatical arrangement given them by the framers, embody a definite meaning which involves no conflict with other parts of the same instrument, then that meaning which is apparent upon the face of the instrument is the only one we are at liberty to say was intended to be conveyed, and there is no room for construction. That which the words declare, is the meaning of the instrument; and neither courts nor legislatures have a right to add to or take away from that meaning. *Newell* v. *People,* 7 N. Y. 97; *Dew* v. *Reid,* 10 Pet. 524; *Spencer* v. *State,* 5 Ind. 76; id. 569; *People* v. *Purdy,* 2 Hill, 35; *Hills* v. *Chicago,* 60 Ill. 90.

The framers who prepared and the people who adopted the constitution must be presumed to have understood the force of the language used, and it is to be presumed that language has been employed with sufficient precision to convey the intent, and unless examination demonstrates that the presumption does not hold good in the particular case, nothing will remain but to enforce it. Cooley's Const. Lim. 55; *Gibbons* v. *Ogden,* 9 Wheat. 188; *Beardstown* v. *Virginia,* 76 Ill. 40; *McClusky* v. *Cromwell,* 11 N. Y. 601; *Newell* v. *People,* 3 Seld. 97.

In construing a constitution the thing to be sought is the thought expressed. *Newell* v. *People,* 7 N. Y. 97; *State* v. *Doran,* 5 Nev. 399; *Prigg* v. *Pennsylvania,* 16 Pet. 612.

After the enumeration provided for in the constitution, and an apportionment thereunder, the apportionment so enacted cannot be altered or changed until the next enumeration has been made. When the State has been once constitutionally apportioned and the apportionment has become a law, it cannot be amended so as to change the boundaries of a single district until after the next succeeding enumeration period. *Denny* v. *State,* 144 Ind. 503; *Slausson* v. *Racine,* 38 Wis. 398.

JOSEPH W. FIFER, for respondent:

Any legislative act which does not encroach upon the powers apportioned to the other departments of the government, being *prima facie* valid, must be enforced, unless restrictions upon the legislative authority can be pointed out in the constitution and the case shown to come within them. Cooley's Const. Lim. (6th ed.) 200, 201.

In every sovereign State ·there resides an absolute and uncontrolled power of legislation. In the American States it rests in the people themselves, as an organic body politic. The people create, by their State constitution, a legislative department upon which they confer this power, and, granting it in general terms, they must be understood to grant the whole power which they possessed, except so far as at the same time they saw fit to impose restrictions. Cooley's Const. Lim. (6th ed.) 205.

The law-making power of the State recognizes no restraints, and is bound by none, except such as are imposed by the constitution. That instrument has been aptly termed a legislative act by the people themselves, in their sovereign capacity, and is therefore the paramount law. The object is not to grant legislative power, but to confine and restrain it. Without the constitutional limitations the power to make laws would be absolute. Cooley's Const. Lim. (6th ed.)'206.

The constitution is not a grant, but a limitation upon the power of the legislature. (*People* v. *Wilson,* 15 Ill. 388.)

On the other hand, it is to be regarded as a grant of powers to the other departments, and neither the executive nor the judiciary can exercise any authority or power except such as is clearly granted by the constitution. *Field* v. *People*, 2 Scam. 79; *People* v. *O'Toole*, 164 Ill. 344.

The legislature can do any act not prohibited by the constitution, and without and beyond these limitations and restrictions it is as absolute, omnipotent and uncontrollable as parliament.    *Mason* v. *Wait*, 4 Scam. 127.

The legislative power, except wherein it is limited or restrained by constitutional provision, confers all legislative power, and authorizes the law-makers to pass any laws and do any acts which are embraced in the broad and general word "legislation;" and, with the exception noted, it authorizes the passage of any law which could be enacted in the most despotic government, or which the people could enact in their primary capacity.    *Firemens' Ben. Ass.* v. *Lounsbury*, 21 Ill. 511; *Winch* v. *Tobin*, 107 id. 212; *Hawthorn* v. *People*, 109 id. 302; *Wilson* v. *Trustees*, 133 id. 443; *People* v. *Hill*, 163 id. 186.

The constitution itself contains all the inhibitions that exist against legislative action.    If the courts can add to these they alter this fundamental instrument, which they are not authorized to do, and themselves become aggressors, and violate both the letter and spirit of that organic law as grossly as the legislature would. Potter's Dwarris, 368.

Courts may resort to implication to sustain a statute, but not to destroy it.    23 Am. & Eng. Ency. of Law, 353.

There is no rule of construction that will allow a court to presume that something else was intended, and thus deprive the legislature, by implication, of its power to legislate upon a given subject. *People* v. *Wilson*, 15 Ill. 393.

As the subject is one of legislative cognizance the power of the legislature must be considered plenary, unless restricted by clear and express language.    *People* v. *Marshal*, 1 Gilm. 672.

· Language restricting a legislative power of the General Assembly must be construed strictly, and unless it shall then clearly appear that the legislation in question is within the terms of the restriction it must be sustained. *Wilson* v. *Trustees*, 133 Ill. 443.

The courts can enforce only those limitations which the constitution imposes, and not those implied restrictions which, resting in theory only, the people have been satisfied to leave to the patriotism and sense of justice of their representatives. *People* v. *Thompson*, 155 Ill. 451.

Prohibitions are only important when they are in the nature of exceptions to a general grant of power, and if the authority to do an act has not been granted by the sovereign to its representative, it cannot be necessary to prohibit it. Cooley's Const. Lim. (6th ed.) 206, 207.

The right of local self-government cannot be taken away, because all our constitutions assume its continuance as the undoubted right of the people and as an inseparable incident to republican government. Cooley's Const. Lim. (6th ed.) 207.

The legislature has all the power of the people over the apportionment of the State into Senatorial and Representative districts not denied to it by the constitution. *People* v. *Thompson*, 155 Ill. 451.

When the legislative and executive branches of the government, by the adoption of an act, give a construction to a provision of the constitution, if the construction thus given is only doubtful the courts will not hold the act void. *People* v. *Hatch*, 33 Ill. 9.

If doubt exists as to the constitutionality of the statute, the benefit of the doubt is to be given to the law. The doubt upon which the court is to act may arise either from an endeavor to arrive at a true interpretation of the constitution, or from a consideration of the law after the meaning of the constitution has been judicially determined. 23 Am. & Eng. Ency. of Law, 351; Cooley's Const. Lim. (6th ed.) 218; *Gaines* v. *Williams*, 146 Ill. 450.

The party who wishes to pronounce a law unconstitutional takes upon himself the burden of proving it beyond a reasonable doubt. *People* v. *Nelson,* 133 Ill. 565; *Gaines* v. *Williams,* 146 id. 450; *Insurance Co.* v. *Swigert,* 104 id. 653; *Wulff* v. *Aldrich,* 124 id. 591.

Courts never interfere to declare a law unconstitutional in cases of doubt. To authorize such action by the court it must be clear that the act violates some provision of the organic law. *Hawthorn* v. *People,* 109 Ill. 302; *Bunn* v. *People,* 45 id. 397.

It may be mischievous in its effects, burdensome upon the people, conflict with our conception of natural right, abstract justice or pure morality, and be of doubtful propriety in numerous respects, and yet we would not be justified to hold that it was not within the scope of legislative authority for such reasons. *Railroad Co.* v. *Smith,* 62 Ill. 268.

Whatever the people might do the courts cannot prevent their representatives from doing, unless the people have positively and expressly forbidden it; and such restrictions and limitations ought to be clear and explicit. *People* v. *Supervisors,* 27 Barb. 562.

We are not at liberty to inquire into the motives of the legislature. We can only examine into its power under the constitution. As one of the departments of the State government the General Assembly, composed of the immediate representatives of the people, should be presumed to act from patriotic motives. *People* v. *Thompson,* 155 Ill. 451.

JOHN M. PALMER, also for respondent:

There are certain matters which each house determines for itself and with which no other authority is at liberty to interfere. Cooley's Const. Lim. 158, and authorities cited.

The constitution is a limitation upon the power of the legislature, and the legislature has every power not dele-

gated to some other department or expressly denied to it by the constitution. *Winch* v. *Tobin*, 107 Ill. 212; *People* v. *Thompson*, 155 id. 451; *Harris* v. *Whiteside County*, 105 id. 445.

In Potter's Dwarris on Statutes and Constitutions (p. 368) the learned writer, in speaking of the constitution of the State of New York, which contains a provision similar to ours, that "the legislative power of the State is vested in the Senate and Assembly," says: "This means the whole legislative power, because the words are general and unlimited. The people have thus parted with all the power of legislation (which was originally in them) except such as is prohibited. Where, therefore, the constitution is silent and the legislature are guilty of no usurpation of power distributed to the other departments of the government, their power, humanly speaking, is omnipotent."

The people must, of course, possess all legislative power originally. They have committed this in the most general and unlimited manner to the several legislatures, saving only such restrictions as are imposed by the constitution of the United States or of the particular State in question. *Thorpe* v. *Hunter*, 19 N. Y. 445; *People* v. *Morgan*, 21 Wend. 563; *Cochran* v. *Van Surlay*, 20 id. 365; *Sears* v. *Cottrell*, 5 Mich. 251; *Mason* v. *Wait*, 4 Scam. 134; *Taylor* v. *Porter*, 4 Hill, 144; *People* v. *Supervisors*, 27 Barb. 593.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The relator, William Mooney, of Joliet, in Will county, in pursuance of leave of the court granted for that purpose, has filed his petition for a writ of *mandamus*, directed to the defendant, William F. Hutchinson, county clerk of said Will county, commanding him to receive and file a certificate of nomination of the relator for the office of State Senator from the twenty-fifth Senatorial district. The petition alleges that relator has been duly nominated by a convention held at Joliet, in said county,

March 12, 1898, as the candidate of the democratic party for Senator from said Senatorial district, consisting of said county of Will, as created by the act of the legislature approved June 15, 1893, in force July 1, 1893, apportioning the State into Senatorial districts; that a certificate of said nomination has been duly made and presented to said defendant, and that defendant refuses to receive and file the same for the reason that said Senatorial district has been changed by the addition of DuPage county, by an act of the legislature approved January 11, 1898, entitled "An act to amend sections 1 and 2 of an act entitled 'An act to apportion the State of Illinois into Senatorial districts and to repeal certain acts therein named,' approved June 15, 1893, in force July 1, 1893," and that defendant claims that by virtue of said act of January 11, 1898, said twenty-fifth Senatorial district now consists of Will and DuPage counties. The defendant has entered his appearance waiving service of process, and the parties have each waived all formalities and submit the cause for decision upon a stipulation that the facts stated in the petition are true. The question thus raised is, whether the election for Senators and Representatives to be held in November, 1898, is to be held in the districts as created by the law approved June 15, 1893, in force July 1, 1893, or in the districts as fixed by said amendatory act approved January 11, 1898, and which, if valid, will go into effect July 1, 1898. The latter act was passed with all the formalities required by law and was duly approved, and the decision depends upon the question whether its enactment was within the power of the legislature. It is agreed that we shall make a final order dismissing the petition or granting a peremptory writ of *mandamus,* according as we shall find the one or the other of these acts in force.

The duty of passing upon the constitutionality of an act of the legislature has always been regarded as a delicate one, to be entered upon with hesitation and

caution, and to call for most deliberate and careful attention. The legislative, and executive branches of the government have necessarily construed the constitution and determined that they may rightfully exercise the power assumed by the passage of the act, and their decision is entitled to the highest respect. In the consideration of the question involved the presumption is in favor of the constitutionality of the act, and it will only be set aside in case of a clear infringement of the constitution. It is to be assumed that the legislature has not only considered the question of power, but has also acted from patriotic motives, and that in this case the amendatory act was prompted by a sense of duty and justice toward the people, in an attempt to secure for them a nearer approach to equality of representation in making the laws by which they are governed. It so happens that this twenty-fifth district selected for the settlement of the controversy was one of those used in the case of *People* v. *Thompson*, 155 Ill. 451, to illustrate the difference of population of different districts and the want of equality under the act of June 15, 1893. This district was made to consist of Will county alone, with a population 24,376 less than the adjoining twenty-ninth district, composed of the four counties of Lee, DeKalb, Kendall and Grundy. The presumption is that it was for the purpose of a better adjustment of rights of representation that DuPage county was added, and that the amendatory act was passed with a view to make the legislative branch of the government more nearly representative of the people in their sovereign capacity. This, however, can not influence the determination of the case if there was a want of power to make the change, for it has always been held, as it was in *People* v. *Thompson*, *supra*, that the court cannot declare a statute unconstitutional and void on the ground of unjust differences not prohibited by the constitution and within the legislative discretion, and neither can the court sustain a law where there is a want

of power to enact it, merely because it is wise in policy or just in its provisions. The parties have properly raised and presented the question of the validity of the act of 1898, and however grave we may regard the responsibility we cannot decline the duty imposed upon us, and if the act is found to be in conflict with the provisions of the constitution we cannot hesitate to so declare.

The constitution divides the powers of the government into three distinct departments, and for the exercise of legislative power creates a legislative department, to be elected by the people in Senatorial districts. The provision authorizing the apportionment of the State into such Senatorial districts is section 6 of article 4, which provides as follows: "The General Assembly shall apportion the State every ten years, beginning with the year 1871, by dividing the population of the State, as ascertained by the Federal census, by the number 51, and the quotient shall be the ratio of representation in the Senate. The State shall be divided into fifty-one Senatorial districts," etc. Acting under the provisions of said section, the legislature, by the act of June 15, 1893, divided the State, according to the last Federal census, into fifty-one Senatorial districts, and by that act the county of Will was made the twenty-fifth district. The act of January 11, 1898, was in form an amendment, which remodeled and changed forty-three of these Senatorial districts, and in the case of the twenty-fifth district added to Will county the county of DuPage. Section 1 of the same article of the constitution is as follows: "The legislative power shall be vested in a General Assembly, which shall consist of a Senate and House of Representatives, both to be elected by the people;" and there are further provisions of the constitution that three Representatives and one Senator shall be elected in each district, and they constitute the two houses.

The passage of an apportionment act is the exercise of a legislative power, (*State* v. *Wrightson,* 56 N. J. L. 126;

*State* v. *Cunningham*, 81 Wis. 440;) and if there were no
other provisions relating to apportionment than the gen-
eral legislative authority conferred by section 1, the legis-
lature might apportion the State at its pleasure, at any
time. There is no express denial in the constitution of
the right to exercise this power whenever the legislature
may see fit, and it is therefore argued, for the defendant,
that it may be exercised at any time and that the legis-
lature may make an apportionment whenever it chooses.
This does not follow, however, and it is not essential, in
order that the constitution may operate as a prohibition,
that it shall contain a specific provision that apportion-
ments shall not be made otherwise than according to its
provisions. The general principles governing the con-
struction of constitutions are the same as those that
apply to statutes. (Potter's Dwarris on Statutes and
Constitutions, 654; 6 Am. & Eng. Ency. of Law,—2d ed.—
921.) The use of negative words would be conclusive of
an intent to impose a limitation, and they are used in
some instances in the constitution, but their absence is
not conclusive of the opposite. Where there are provi-
sions inserted by the people as to the time when a power
shall be exercised, there is at least a strong presumption
that they designed it should be exercised at that time and
in the designated mode only, and such provisions must
be regarded as limitations upon the power. (Cooley's
Const. Lim.—6th ed.—94.) If legislative power is given
in general terms, and is not regulated, it may be exer-
cised in any manner chosen by the legislature; but where
the constitution fixes the time and mode of exercising
a particular power it contains a necessary implication
against anything contrary to it, and by setting a particu-
lar time for its exercise it also sets a boundary to the
legislative power. If a power is given and the mode of
its exercise is prescribed, all other modes are excluded.
(Sedgwick on Construc. of Stat. and Constitutions, 31.)
The legislature must keep within the legislative powers

granted to it, and observe the directions of the constitution. (Sutherland on Stat. Const. sec. 26.) This doctrine was applied in *State* v. *Wrightson, supra,* where an apportionment of assembly districts in New Jersey was in question, and it was said: "In the construction of statutes it is a cardinal rule, which applies as well to constitutional provisions, that when the law is in the affirmative that a thing shall be done by certain persons or in a certain manner, this affirmative matter contains a negative that it shall not be done by other persons or in another manner, upon the maxim *expressio unius est exclusio alterius.*"

In *Page* v. *Allen,* 58 Pa. 338, which involved the constitutionality of the registry law of that State, it was held that the inhibitions of the constitution as to legislation are to be regarded as well when they arise by implication as by expression, and that the expression of one thing in the constitution is the exclusion of things not expressed. It is here admitted, as it necessarily must be, that the provisions for apportionment are all exclusive except the particular one as to time. It is not denied that the basis for apportionment must be the population of the State as ascertained by the last Federal census; that the population can only be divided by the number 51, and that the quotient must be the ratio of representation in the Senate. The only claim is, that the provision as to time is not exclusive, and we cannot see any substantial ground for establishing a different rule respecting the time than the mode of doing the act. In Wisconsin the constitution provided for an apportionment and organization of assembly districts once in five years, but contained no express prohibition against their alteration between the periods fixed for apportionment, and in *Slausen* v. *City of Racine,* 13 Wis. 398, it was said, that whatever limitation existed upon the power of the legislature in that respect was to be derived from the general scope and object of the provisions of the constitution concerning the apportionment of Senators and Representatives, but that it

might well be said that this furnished such limitation, and it was held that the provision implied that apportionments should not be made at any other time than that fixed by the constitution. The constitution of Indiana fixes the time once in six years when an enumeration of the voters of the State shall be taken and an apportionment shall be made by law. In *Denney* v. *State*, 144 Ind. 503, an apportionment act passed in 1895 was in question, and the main dispute was whether, under the constitution, any apportionment act could be passed at that time. It was insisted in support of the act, that the constitution committed to the legislative department, by a general grant of legislative power, the authority to make apportionments, and that the provision requiring the enactment of an apportionment law at the beginning of each period of six years was not intended as a prohibition upon the legislature from making other apportionments whenever that body might think best. This question was determined against the claim made, and it was held that if there were no particular provisions in regard to the subject of legislative apportionment, the legislature might, under the full and unrestricted vesting of legislative power, enact apportionment laws at their pleasure, but that the fixing by the constitution of a time and mode for the doing of such act was by necessary implication a forbidding of any other time or mode and a prohibition of the exercise of the power in any other way.

The eminent counsel who have argued this case for the defendant with great learning and ability, have failed to find any decisions contrary to the foregoing or any authorities conflicting with those given, but insist that there is a difference between the constitutions of Indiana and this State, which makes the decision in *Denney* v. *State*, *supra*, inapplicable here. The distinction attempted to be shown we are compelled to regard as unsubstantial, and cannot consider it a ground of difference that the enumeration which was made the basis of the apportionment

in Indiana is taken by the State once in six years, while the census which is made a like basis in this State is taken by the United States and once in ten years. The Federal constitution, which was adopted in 1787, provides in section 2 of article 1 for an enumeration within three years after the first meeting of Congress, and within every subsequent term of ten years, as a basis for the apportionment of Representatives and direct taxes. Under that constitution a census has been taken in every period of ten years, commencing with 1790, and under it there will be, at every period of ten years provided for by the constitution of this State, a census taken as a basis for division of the State into Senatorial districts.

The decisions are also criticised by counsel for defendant under the rule that what is expressed is exclusive only where it is creative, and that the maxim applies only to a provision which grants originally a power but does not limit or destroy a pre-existing right. It is contended that the power to apportion does not originate with the provision of the constitution, but is a pre-existing right independent of the provision, and that therefore the rule is not to be applied. To this we cannot assent. The legislature is the creature of the constitution, and the provisions in respect to the two houses, the division of the State into Senatorial districts by a particular plan and the membership of each of the houses, are creative in their nature. They relate to the framework, the membership and the organization of the legislative department of the government created by the constitution for the exercise of legislative powers. They prescribe the manner in which districts shall be created, that a Senator and three Representatives shall be elected in each district, and provide for the constitution and organization of the department which shall exercise legislative power. The conditions for the exercise of this power of apportionment are particularly prescribed, and we think that those acting under it cannot vary the con-

ditions. (Endlich on Int. of Statutes, 533.) Another rule is, that where there is a general provision which would include a particular subject and there is a special provision relating to that subject, the special provision controls and the particular subject is not governed by the general provision. In this rule we found, as we conceived, a substantial ground for holding the Judicial Apportionment act of 1897 in force from its passage, and not included in the general provision as to when laws shall take effect. (*People* v. *Rose*, 166 Ill. 422.) Here there is a general delegation of legislative power, with subsequent provisions giving specific and precise directions to make the apportionment at a particular time and in a designated way, and these, we think, manifest an intention to impose a negative upon the exercise of the power at any other time.

We have already said that if there were no further provision than the general grant of legislative power the legislature might apportion the State at its will,— and this was the situation under the constitution of 1818, which contained no restriction except the single one in section 8 of the schedule to that instrument, fixing the apportionment until the first enumeration directed to be taken in 1820 and every five years thereafter. The apportionment after the first census was not made to depend upon any subsequent enumeration or event, and after the first enumeration the legislature not only apportioned the State every five years, but made changes during intervals. A change in the practice commenced with the adoption of the constitution in force April 1, 1848. In that constitution was first introduced a provision for re-apportionment at particular times, according to the number of white inhabitants at the first regular session after returns were made. Under that constitution the legislature made its first re-apportionment in 1854, based on the census of 1850. This apportionment continued in force until the Federal census was taken in 1860, and

then a new apportionment was made in 1861. The present constitution was adopted in 1870, containing a similar provision, now under consideration. After that time the legislature apportioned the State in the years 1872, 1882 and 1893. From the time of the adoption of the constitution of 1848 for a period of fifty years, up to the act of January 11, 1898, apportionments were made at the intervals stated, based upon the census taken by the United States, and there was no change made between such periods. This practical construction of the constitution re-enforces the conclusion at which we have arrived. Such a legislative interpretation, long established and acquiesced in, is regarded as of great force in determining the true construction, and raises a strong presumption that it is correct. *Bruce* v. *Schuyler,* 4 Gilm. 221; *Matthews* v. *Shores,* 24 Ill. 28; *People* v. *Morgan,* 90 id. 558; Cooley's Const. Lim. (6th ed.) 82; Sedgwick on Construc. of Stat. and Const. Law, 412.

Attention has been called by counsel to the fact that the legislature of 1893 passed an apportionment act which was approved May 16, 1893, and also passed the subsequent act of June 15, 1893, repealing the same and apportioning the State. This act of May 16, 1893, is conceded to have been an unconstitutional and void act, which never became a law for the reason that it omitted the town of Riverside, a populous town in Cook county, which was not included in any of the Senatorial districts and was deprived of representation. The validity of the act of June 15, 1893, was therefore not affected by it, since the power to apportion the State was not thereby exercised. The validity of the act of June 15 passed beyond the field of controversy by the decision in *People* v. *Thompson, supra,* and is now conceded. The act of May 16, 1893, has no force, as affecting the question of construction by the legislative body of the legislative power, because it was incomplete and void. Its passage and repeal do not in any manner weaken the force of the

construction of the constitution given by the legislature and acquiesced in for a period of about fifty years.

It is also argued that a fair construction of the provision in question is, that it was to secure to the people a re-apportionment at least once in ten years, rather than to fix the time for the exercise of the power or to operate as an exclusion of apportionments at other times. The same argument was insisted upon in *Denney* v. *State, supra,* but did not prevail, and it was held that the apportionment could only be made after the taking of an enumeration, and that when a valid apportionment was once made it must stand until after the making of the next enumeration. If the purpose had been as contended, it is probable that the constitution would have expressed that intent which is lacking. Furthermore, it does not seem, from the history of legislative apportionments prior to the adoption of the provision, that there was any occasion to provide for securing apportionments as often as such periods, or that a neglect to apportion was regarded as an evil to be provided against. The legislatures during the thirty years under the constitution of 1818 had been in the habit of making frequent apportionments. The courts may always look to ascertain the evil intended to be remedied; but this provision could not have been aimed at an evil which did not exist, and it would rather seem that the object was to establish definite periods for re-apportionments. When the legislature of 1893 made the apportionment of that year the conditions existed which authorized the exercise of the power, and the legislative discretion was exercised based upon the Federal census of 1890,—a division of the population by 51 and the resulting quotient as the ratio of representation. That power and discretion, when fully exercised, were exhausted, and the power will not again arise until the conditions provided for in the constitution shall again exist. The power and discretion are to be exercised at stated intervals and in certain modes, and

that legislature, upon a consideration of the facts, exercised the power and the discretion. A subsequent reapportionment based upon the same census, the same division and the same quotient, which it is admitted must be used, would be nothing but reversing the judgment and discretion of that legislature, exercised upon the same facts at the time expressly authorized by the constitution; and we cannot think that it was in the contemplation of those who adopted the constitution that succeeding legislatures should set aside the action of the first by changing and remodeling districts, where no new condition contemplated by the constitution exists. The power to make apportionments has not always been exercised at exact periods of ten years, but the power conferred by the constitution is a continuing one from the time it is constitutionally devolved upon the legislature until it is performed. (*People* v. *Thompson, supra; State* v. *Cunningham, supra.*) Twelve States, having a general plan of apportionment similar to our own, have by their constitutions forbidden a change between the periods fixed in such constitutions. These prohibitions are conclusive of that which, in our case, must be the subject of construction, and which has been practically construed by the legislature for a long period of time, as we have already seen. The absence of such an express prohibition in our constitution is not, as before stated, at all conclusive that the prohibition was not intended.

Plausible reasons may be given for sustaining the power,—and especially in this particular instance,—which would naturally appeal with force to those who believe that the apportionment of 1893 was prompted by some other motive than the public good or a desire to secure to the people, as nearly as possible, equality of representation; but this consideration cannot have force as against the provisions of the constitution, and it is to be remembered that the same rule which would permit a correction of inequality would also permit the setting

aside of a just and fair apportionment made at the time
fixed by the constitution, and the substitution of unjust
and oppressive conditions within the latitude allowed by
the constitution to the legislature.

We are convinced that the construction we have given
to the constitution is the correct one, and we feel our-
selves under the necessity of declaring the apportionment
act of 1898 unconstitutional and invalid.  A peremptory
writ of *mandamus* is awarded, according to the prayer of
the petition.
                                        *Writ awarded.*

Mr. JUSTICE WILKIN, dissenting:

In the limited time at my disposal I can only state
in a general way why I think the foregoing opinion and
conclusion unsound.

The proposition, "the provision authorizing the appor-
tionment of the State into such Senatorial districts is sec-
tion 6 of article 4," is, in my opinion, a misconception, and
forms the basis of the wrong conclusion reached.  That
section does not empower the General Assembly to make
apportionment laws, nor does its language purport to do
so.  It only declares how the power already existing in
the legislature shall be exercised.  Nor can I see how the
fact that the legislative body of the State is provided for
in the constitution,—"is the creature of the constitution,"
—in any way gives support to the assertion that section
6 is creative of the power in that body to apportion the
State.  It is admitted that the power to pass such laws
is a legislative power.  It is inherent in the General As-
sembly, and can be exercised by it at such times and in
such manner as it may deem wise and proper, except in
so far as it is limited by the constitution.  It has often
been said by this court: "No proposition is better settled
than that a State constitution is a limitation upon the
power of the legislature, and that the legislature pos-
sesses every power not delegated to some other depart-
ment or expressly denied to it by the constitution."  The

rule is nowhere more clearly stated than by Judge Cooley in his work on Constitutional Limitations, quoted with approval in *People* v. *Thompson*, 155 Ill. 451, as follows: "Whatever the people might do the courts cannot prevent their representatives from doing, unless the people have positively and expressly forbidden it. Such restrictions and limitations ought to be clear and explicit. Where the power which is exercised is legislative in its character the courts can enforce only those limitations which the constitution imposes, and not those implied restrictions which, resting in theory only, the people have been satisfied to leave to the judgment, patriotism and sense of justice of their representatives."

The question here is, does the language, "the General Assembly shall apportion the State every ten years, beginning with the year 1871, by dividing the population," etc., prohibit the passage of such statutes oftener than once in each period of ten years. The language as to when an apportionment shall be made, it will be seen, is very general and indefinite, and does not warrant the assumption throughout the majority opinion that it fixes the *time* when it shall be done. It does not require the first apportionment to be made in the year 1871, or at the first session after the Federal census of 1870, and every ten years thereafter, and in this respect is peculiar. It is unlike our constitution of 1848, or that of the States of Indiana and Wisconsin, referred to in the cases cited from those States. They expressly provide for apportionments at fixed intervals, but no such requirement is found in our present constitution. It does no more than fix decennial periods, beginning with the year 1871, and requires an apportionment to be made within each of those periods. Any session of the legislature during the period can lawfully divide the State into Senatorial districts, if it has not been done at a prior session in the period,—and this, not because it was the duty of a prior session to do so and the duty a continuing one, but because the duty devolves

upon one session as much as another. It could not be claimed that the act in question is unconstitutional because passed in the year 1898. The contention must be that power is only given to make one apportionment in the period beginning with the year 1891 and ending with the year 1901, and that the legislature of 1893, by the passage of the act at that session, had exhausted that power.

Is it true that the authority of the General Assembly is by this indefinite language limited to the passage of a single act during each ten years? That there is no express language to that effect is admitted, but the theory of the foregoing opinion is that the prohibition arises by necessary implication. I do not so understand the language. The power to apportion the State every ten years is not, in my opinion, so incompatible or inconsistent with the right to do so oftener as to amount to an implied prohibition. The assertion that there is no substantial ground for establishing a different rule respecting the time when apportionments may be made than that which applies to the mode of doing the act is certainly unwarranted. It is conceded by the respondent that an apportionment must be made every ten years; but the insistence is that, consistently with that duty, it may be done oftener,—and this raises the question of construction. It is impossible, however, that a mode other than that prescribed could be followed consistently with the provision in question,—that is, the population must be divided by 51, the quotient to be the ratio of representation. Certainly the ratio cannot be obtained, consistently with that express requirement, by using any other number as a divisor, and hence there is no room whatever for construction in that regard. And so as to the other requirements in the mode prescribed. The holding here is, that because the constitution says the General Assembly shall apportion the State every ten years it cannot do so more than once in any period of ten years, no matter what may be the emergency therefor. It seems

to me no such conclusion can be reasonably drawn, much less arise by necessary implication. It is the duty of courts to so construe constitutional provisions and acts of the legislature as to harmonize the two, and sustain the law if it is possible to do so. The rule is: "Language restricting the legislative power of the General Assembly must be construed strictly, (*People ex rel.* v. *Wilson,* 15 Ill. 388,) and unless it shall then clearly appear that the legislation in question is within the terms of the restriction it must be sustained. If it only be doubtful whether it is or not, the doubt must be in favor of the validity of the action of the General Assembly." (*Wilson* v. *Board of Trustees,* 133 Ill. 443.) "If doubt exists as to the constitutionality of the statute, the benefit of the doubt is to be given to the law. The doubt upon which the court is to act may arise either from an endeavor to arrive at a true interpretation of the constitution, or from a consideration of the law after the meaning of the constitution has been judicially determined." 23 Am. & Eng. Ency. of Law, 351, and cases cited in note.

The constitution, considered as a whole, shows that its framers did not intend the effect given to the language of section 6 by this decision. If the purpose had been to prohibit apportionments oftener than once every ten years, it is reasonable to suppose that language would have been used clearly expressing that intention, as is done in section 9 of article 4, fixing the sessions of the General Assembly at the time named "*and at no other time;*" and in section 5 of article 6, providing for the division of the State into districts for the election of Supreme judges, wherein it is said "the boundaries of the districts may be changed at the sessions of the General Assembly next preceding the election for judges therein, *and at no other time;*" and again in section 13 of the same article, authorizing the apportionment of the State into judicial circuits, the language being, "new circuits may be formed and the boundaries of the circuits changed by the General As-

sembly at its session next preceding the election for circuit judges, *but at no other time.*" It is also a significant fact that no less than twelve other States of the Union, in the frame of their constitutions, have deemed it necessary, by the use of different terms of expression, to provide that apportionments should be made at fixed periods and at no other time.

There is to my mind no force in the argument attempted to be drawn from what is said to be the construction placed upon the constitution by the legislature in making apportionments of the State every ten years, and not oftener. In dividing the State into Senatorial districts once in each period of ten years the legislature did so not under a construction of the constitution thereby placed upon it, but by simply following its plain requirement. That it did not do so oftener cannot be said to amount to a construction by it that no power existed to do so. It cannot be assumed that it refrained from exercising the power because it understood it did not possess it, rather than because it found no occasion for its exercise. The only necessity for a re-apportionment more than once in a decennial period, which is here shown, arose at the session of 1893, as stated in the foregoing majority opinion, and that legislature did not hesitate to make it. The attempt to weaken the force of that action as indicating the construction placed upon the constitution by the legislature, upon the ground that the first act was unconstitutional, is, I think, futile. Without reference to the question as to the power of the legislature to pass upon the constitutionality of statutes enacted by it, it is illogical to say that the legislature could review its own acts by repealing the former statute at the same session, or, as I suppose would be admitted, at the next session of the legislature, on the ground that it was unconstitutional because some small part of the territory was attached to no district, but would have no power to do so upon a discovery that the

apportionment was grossly unjust to the people of one or many portions of the State by reason of a disregard of the requirement that the districts shall be formed of compact and contiguous territory, etc., and as nearly as practicable containing an equal number of inhabitants.

No good purpose will be served by a review of the authorities cited in the majority opinion. Unless it must be held that the power of the General Assembly to apportion the State is derived from section 6, *supra*, of the constitution, or, rather, unless there is no reasonable ground for holding otherwise, none of them, properly understood, support the conclusion announced. The Wisconsin case does not decide the question here involved nor purport to do so, and the Indiana decision does so only incidentally, the question not being of controlling importance in that case. But as already said, the constitutional provisions of these States and those of our own are materially different, and the decisions for that reason should not be given the force of authority here. The fact that counsel for the defendant have been able to cite no decisions in conflict with them signifies nothing. As already said, the language of our constitution is peculiar, and, so far as I have been able to discover, is found in no other State constitution. It is before this court for the first time to be construed, and it is not strange that decided cases are not to be found bearing on the issue here. It is not for the defendant to show that the act in question is constitutional, but for those who challenge its validity to point out and make clear its invalidity.

For the reason already stated, that the power to make apportionments is inherent in the legislature and not created by the constitution, the maxim *"expressio unius est exclusio alterius"* is not properly applicable in the construction of section 6. It is a rule only to be applied where the intention of the law-maker is not otherwise manifest, and as said by Mr. Sutherland in his work on

Statutory Construction, (sec. 325,) "under these conditions it leads to sufficient and satisfactory conclusions, but otherwise the expression of one or more things is not a negation or exclusion of other things;" and he adds: "What is expressed is exclusive only when it is creative, or in derogation of some existing law or of some provision in the particular act."

In my opinion the Apportionment act of January 11, 1898, entitled "An act to amend sections 1 and 2 of an act to apportion the State of Illinois into Senatorial districts, and to repeal certain acts therein named, approved June 15, 1893," is a valid and constitutional enactment, and that the writ in this case should be denied.