THE PEOPLE ex rel. John F. Heffernan

v.

R. L. CARLOCK, County Clerk.

*Opinion filed October 25, 1902.*

1. LEGISLATURE—*courts cannot inquire into motives of the legislature.* Courts are not at liberty to inquire into the motives which actuated the General Assembly, but must act upon the presumption that the law-making body was actuated by patriotic purposes.

2. SAME—*extent to which action of legislature is final.* To the extent an act of the legislature is expressive of discretion and judgment its action must be regarded as final and not within the power of courts to review, unless the discretion has been so grossly abused as that it may be said not to have been exercised at all.

3. APPORTIONMENT—*constitutional provision for apportionment construed.* Section 6 of article 4 of the constitution, requiring the legislature to apportion the State into Senatorial districts every ten years, means that within each period of ten years intervening between the taking of the Federal census the legislature may make one apportionment, but it is not necessary that ten years elapse between such apportionments, provided but one apportionment is made in each census period.

4. SAME—*apportionment need not be made at first session after census.* The power of the legislature to apportion the State into Senatorial districts is not lost by failure to exercise it at the first session after the completion of any Federal census, but may be exercised at any time thereafter, though one exercise thereof exhausts the power until after the next Federal census.

5. SAME—*legislature had power to pass the Apportionment act of 1901.* The legislature, at its session in 1901, had full authority and power to pass the act apportioning the State into Senatorial districts. (Laws of 1901, p. 6.)

6. SAME—*what requirements as to apportionment are absolute.* The absolute requirements imposed by the constitution with regard to Senatorial apportionment are, that the districts shall be bounded by county lines, (except where a county contains a sufficient number of inhabitants to make more than one district); that they shall be composed of contiguous territory, and that no district shall contain less than four-fifths of the Senatorial ratio.

7. SAME—*requirements of compactness of territory and equality of population permit of legislative discretion.* A Senatorial apportionment can only be had by a practical and reasonable approximation toward equality in population and compactness of territory, to be determined by the legislature in the exercise of a fair and honest judgment and impartial discretion.

8. SAME—*when courts cannot hold apportionment act invalid.* If the absolute requirements of the constitution concerning Senatorial apportionment have been observed in an apportionment act, and there is an approach toward equality in population as determined by the ratio, and the districts are in some degree compact, the court cannot hold the act invalid upon the ground that a nearer approach toward equality of population and compactness of territory could have been made.

9. CONSTITUTIONAL LAW—*Apportionment act of 1901 not unconstitutional.* The Senatorial Apportionment act of 1901 (Laws of 1901, p. 6,) is not violative of the constitutional requirements of equality of population and compactness of territory, and is therefore a valid enactment.

ORIGINAL petition for *mandamus.*

M. T. MOLONEY, and L. B. STRINGER, for petitioner.

Mr. JUSTICE BOGGS delivered the opinion of the court:

This is a petition filed in this court in the name of the People of the State, on the relation of John F. Heffernan, against R. L. Carlock, as county clerk of the county of McLean, to test the constitutionality of the act of the General Assembly entitled "An act to apportion the State into Senatorial districts, and to repeal certain acts therein named," approved May 10, 1901.    (Laws of 1901, p. 6.)

The enactment which is attacked provides that the counties of McLean and Ford shall constitute the twenty-sixth Senatorial district. The act approved June 15, 1893, in force July 1, 1893, (2 Starr & Cur. Stat. 1896, p. 1678,) making an apportionment of the State into Senatorial districts, provided that the county of McLean alone should constitute the twenty-second Senatorial district.    The petition avers that for reasons therein given, which are hereinafter referred to, the act of 1901 is unconstitutional and void and that the act of 1893 is the only valid enactment in force relating to the apportionment of the State into Senatorial districts.    The petition further alleges that at a convention of delegates representing the democratic party in the county of McLean, on the 16th day of April, 1902, the petitioner was nominated as the candi-

date of said democratic party for the office of representative in the General Assembly for the said twenty-second district under the said Apportionment act of 1893, which said district, under said act of 1893, comprised but one county, the county of McLean; that said nomination had been certified, as required by law, to the respondent, Carlock, as county clerk of said McLean county, and that said respondent refused to receive or file said certificate, on the ground that the act of 1893, constituting McLean county the twenty-second Senatorial district, had been repealed by the act of 1901, and that under said latter act the county of McLean and the county of Ford constituted the twenty-sixth Senatorial district, and that certificates of nomination for the office of representative for the counties comprising the twenty-sixth Senatorial district should, when made, be filed with the Secretary of State, etc. The petition insists that the act of 1901 is inoperative, and the prayer of the petition is, that a writ of *mandamus* issue out of this court requiring the respondent clerk to receive and file the certificate of the nomination of the relator for the office of representative for the twenty-second district under the provisions of the said act of 1893, and to place the name of the relator on the official ballot for the election to be held on Tuesday after the first Monday in November, 1902, as the candidate of the democratic party for representative from the said twenty-second district, as apportioned by the act of 1893.

The position of the petitioner is, the act of 1901 must be condemned as violative of the constitution of 1870 for two reasons, which will be stated and considered in the order as presented by counsel. As both grounds of objection involve consideration of section 6 of article 4 of the constitution of 1870, it is set forth, as follows: "The General Assembly shall apportion the State every ten years, beginning with the year 1871, by dividing the population of the State, as ascertained by the Federal

census, by the number 51, and the quotient shall be the ratio of representation in the Senate. The State shall be divided into fifty-one Senatorial districts, each of which shall elect one Senator, whose term of office shall be four years. The Senators elected in the year of our Lord 1872, in districts bearing odd numbers, shall vacate their offices at the end of two years, and those elected in districts bearing even numbers, at the end of four years; and vacancies occurring by the expiration of term, shall be filled by the election of Senators for the full term. Senatorial districts shall be formed of contiguous and compact territory, bounded by county lines, and contain, as nearly as practicable, an equal number of inhabitants; but no district shall contain less than four-fifths of the Senatorial ratio. Counties containing not less than the ratio and three-fourths, may be divided into separate districts, and shall be entitled to two Senators, and to one additional Senator for each number of inhabitants equal to the ratio contained by such counties in excess of twice the number of said ratio."

The first contention is, that under a proper construction of said section 6 of article 4 the General Assembly is prohibited from apportioning the State into Senatorial districts more than one time in any period of ten years, and that the act of 1901, having been passed within less than ten years after the act of 1893, is for that reason illegal and void. This is a misapprehension of the true meaning of said section 6, and also of the holdings of this court in *People* v. *Hutchinson*, 172 Ill. 486. The true meaning of said section 6 is, that within each period of ten years intervening between the taking of the census by the government of the United States, the General Assembly of the State may make one apportionment of the State into Senatorial districts, and that but one such apportionment may be made in each of such periods. There is no constitutional requirement that a period of ten years shall elapse after the enactment of an appor-

tionment act before another act may lawfully be adopted making another apportionment. The constitution permits the exercise of legislative power to apportion the State into Senatorial districts but once in the periods intervening between the taking of the census by the general government. When a valid apportionment has once been made it must stand until after the making of the next enumeration by the Federal authorities. For this reason we held in *People* v. *Hutchinson, supra,* that in adopting the act of 1893 the General Assembly had fully exercised the power and discretion vested in it by the constitution, and was without authority to exercise such power until the condition provided for in the constitution (namely, the taking of the census of 1900,) should occur, and that therefore the act of 1898, purporting to again re-apportion the State into Senatorial districts before the enumeration of 1900, was nugatory and void for want of power in the General Assembly to act a second time after the census of 1890 and before the period had arrived for the census to be taken in 1900. We there said (p. 503): "When the legislature of 1893 made the apportionment of that year the conditions existed which authorized the exercise of the power, and the legislative discretion was exercised based upon the Federal census of 1890,—a division of the population by 51 and the resulting quotient as the ratio of representation. That power and discretion, when fully exercised, were exhausted, and the power will not again arise until the conditions provided for in the constitution shall again exist. The power and discretion are to be exercised at stated intervals and in certain modes, and that legislature, upon a consideration of the facts, exercised the power and the discretion. A subsequent re-apportionment based upon the same census, the same division and the same quotient, which it is admitted must be used, would be nothing but reversing the judgment and discretion of that legislature, exercised upon the same facts at the time expressly authorized

by the constitution; and we cannot think that it was in the contemplation of those who adopted the constitution that succeeding legislatures should set aside the action of the first by changing and remodeling districts, where no new condition contemplated by the constitution exists."

The power conferred by the constitution upon the General Assembly to apportion the State into Senatorial districts is not lost by the failure to exercise it at the first session after the completion of any Federal census. It is continuous, and may be lawfully exercised at any time after it has constitutionally devolved upon the legislature, until it is performed. (*People* v. *Hutchinson, supra; People* v. *Thompson,* 155 Ill. 451; *State* v. *Cunningham,* 81 Wis. 440.) Hence it is very clear two valid apportionment acts may be adopted within less than ten years. The legislature, after a Federal enumeration, may not exercise the power with which it is clothed until near the time for the next enumeration. After such succeeding enumeration the constitutional power to again make a re-apportionment is conferred, and a valid enactment for that purpose may be adopted without any reference to the period of time which has elapsed after the passage of the former act. This question received careful attention when the case of *People* v. *Hutchinson, supra,* was before us, and was, we think, so fully, exhaustively and clearly stated and discussed in the opinion rendered in that case that nothing more need be here added.

The Federal enumeration taken in 1900 constituted the condition upon which the General Assembly which convened in 1901 became, under the constitution, invested with power to apportion the State into Senatorial districts, and the right to exercise that power did not depend, in any degree, upon the question when the power given by the same constitutional provision to make an apportionment after the census of 1890 had been exercised. While the General Assembly may not apportion the State into Senatorial districts more than once during

the period of ten years intervening between the taking of the census of the population by the general government, it has full power to make one apportionment during each of such periods and during any portion of the time of such period. The legislature, at its session in 1901, had therefore full authority and power to adopt the act apportioning the State into Senatorial districts.

Secondly, it is contended that in exercising the power the legislature failed to observe the requirement of said section 6 of article 4 of the constitution, that "Senatorial districts shall be formed of contiguous and compact territory, bounded by county lines, and contain, as nearly as practicable, an equal number of inhabitants; but no district shall contain less than four-fifths of the Senatorial ratio." The duty of the General Assembly as to certain of these requirements is absolute, namely, (1) the districts shall be bounded by county lines, (except in case a county shall contain inhabitants equal in number to a Senatorial ratio and three-fourths,) so that parts of a county less than a whole cannot be placed in a district with another county; (2) the district shall be composed of contiguous territory; (3) no district shall contain less than four-fifths of a Senatorial ratio. These requirements must be unconditionally observed, and may not be varied according to the judgment and discretion of the legislature. The other requirements, with reference to the equality of the districts in point of population and that the districts shall be formed of compact territory, are equally binding upon the law-making body and may not be disregarded, but are, in a sense, subordinate to those requirements of the absolute character and unconditional class, if it is impracticable to literally observe them. As not a county in the State outside of the county of Cook has a population entitling it to be formed into more than one district, and as no portion of one county may be formed into a district with the whole or portions of another county, and as the counties of the State differ

so radically in shape, size and population, it is manifest
the counties cannot be combined in districts each having
a population equal to four-fifths of a ratio and bounded
by county lines, so that each district shall be of compact
territory and have an equal number of inhabitants. An
apportionment can only be had by a practical and rea-
sonable approximation toward equality in population
and compactness of territory, to be determined by the
legislature in the exercise of a fair and honest judgment
and impartial discretion.

It is a long established rule of law that the judiciary
are not at liberty to inquire into the motives which actu-
ated the General Assembly,—a co-ordinate branch of the
government of the State,—but are to act upon the pre-
sumption the law-making body was actuated by patriotic
purposes. (*People* v. *Thompson, supra.*) To the extent an
act of the legislature is an expression of the discretion
and judgment reposed in the General Assembly the action
of the representatives of the people in the legislature
assembled must be regarded as final, and not within the
power of the court to review unless the discretion has
been plainly so grossly abused as that it may be said it
was not exercised at all. (*People* v. *Thompson, supra;* 2 Am.
& Eng. Ency. of Law,—2d ed.—p. 486, and note.) As we
said in *People* v. *Thompson, supra,* the question whether the
principles of the constitutional requirements of compact-
ness of territory and equality of population in Senatorial
districts have been applied at all, is one which the courts
may finally determine; but whether or not the nearest
practicable approximation to perfect compactness and
equality has been attained is a question for legislative
discretion. The attempt on the part of the court to con-
demn an apportionment act merely on the ground an
apportionment conforming more nearly to the constitu-
tional requirements, in which a discretion was involved,
could be made, would be to invade the province of the
legislative department of the State.

It is not contended by the petitioner the Apportionment act of 1901 is violative of any of the constitutional requirements other than those relating to equality of population and compactness of territory. The only definitely absolute requirement as to equality of population is that no Senatorial district shall contain less than four-fifths of a Senatorial ratio. This requirement has been obeyed. That exact equality of population is not attainable, in view of all the other requirements of the constitution and in view of the varying size, shape and population of indivisible counties, must, of course, be conceded. How much more nearly such equality might have been attained ought to have had the candid, impartial and non-partisan consideration of the legislature, and we can only assume it received such consideration. So, also, as to the element of compactness of territory. Absolute exactness in that respect is not attainable. The requirement of contiguity of territory has been observed in every instance, but in the formation of one, at least, of the districts it might well have been urged in the General Assembly that the requirement of compactness had not been observed and complied with as fully, fairly and justly as might be done and that a nearer approximation to compactness was attainable. How much nearer an approximation to compactness might have been made in this district could not, necessarily, be determined in view, alone, of the territory of that district and of the other districts adjoining it, but possibly only upon a view of all the districts in the State. A change in that district might have made necessary a re-adjustment of the entire apportionment, and this involved the exercise of the judgment and discretion of the law-making body. Partisan spirit may have warped the judgment and discretion of the General Assembly, but we cannot declare the principle of compactness of territory was ignored or not applied at all in the formation of this district. It is our duty to presume that the law-making department of the

State performed its duty in the enactment of the statute, and if there be a reasonable doubt as to that question, we are required, as a co-ordinate branch of the government of the State, to resolve that doubt in favor of the validity of the action of the representatives of the people convened in the General Assembly. *People* v. *Gaulter*, 149 Ill. 39.

The petitioner refers to and quotes the following from the opinion of this court in *People* v. *Thompson*, *supra*, on page 481: "The apportionment as made by the act of 1893 does not make the districts vary as much in population as from a fifth below to a fifth above the ratio. Here is a wide latitude, in a populous State, for inequality, it must be admitted; and we do not mean to say that the legislature could have arbitrarily formed a district containing simply the constitutional minimum of four-fifths and another district adjoining with one-fifth or more above the ratio, when, by taking a county from the larger and adding it to the smaller district, greater equality in population and compactness of territory could have been secured, for in such case it might, perhaps, be said that the principles of compactness of territory and approximate equality in population above the minimum had been disregarded and not applied at all by the legislature." The petitioner then insists that the General Assembly, in passing the act here in question, did precisely the thing which, it is said, we inferentially said in that case it could not legally do. In this counsel are in error. Had counsel considered the entire paragraph, the full meaning of what was there said would have more clearly appeared. Continuing from what is above quoted, we further said: "But no opinion is expressed as to whether such an apportionment would be valid or not, for by the statute in question the lowest number of inhabitants in any district is, in round numbers, 62,000, which is an approach toward the ratio (75,026, the standard of quality,) of 2000 above the minimum of four-fifths

of the ratio. It is therefore seen that the legislature did have in view, and did apply, to some extent, the principle of approximate equality in population above the minimum fixed by the constitution,—not the nearest approximation, it is true; and it might well have been contended in the legislative body itself, having the power to determine the question, that justice and equality in representation, as contemplated by the constitution, required a much closer approximation."

These observations tend to sustain, rather than to overthrow, the act of 1901. In the first place, no district is pointed out which, as constituted by that act, contains simply or only four-fifths of the ratio,—the minimum fixed by the constitution,—but a substantial excess above such minimum is shown. The district mentioned as having the smallest number of inhabitants contains 1644 more than four-fifths of the ratio, and it may be said, as it was in the *Thompson case*, "it is therefore seen that the legislature did have in view, and did apply, to some extent, the principle of approximate equality in population above the minimum fixed by the constitution." In the case quoted from it was pointed out that the district having the smallest number of inhabitants under the act of 1893, contained, in round numbers, 2000 above the minimum of four-fifths, and that there was such an approach toward the full ratio above the limit fixed by the constitution as to indicate that the legislature had not ignored, but had to some extent applied, the principle of approximate equality as determined by the ratio, and had to that extent obeyed the constitutional requirement to form districts containing as nearly as practicable an equal number of inhabitants. But as said in that case, while it is for the courts to determine whether the rule prescribed by the constitution governing apportionments has been observed at all or not in any given case, it is the province of the legislature, subject to the more definite limitations fixed by the constitution, to determine

what approximation can be made toward exact equality in population,—in other words, how the apportionment can be made so that the districts will contain, "as nearly as practicable, an equal number of inhabitants." This is left to the legislative judgment and is not subject to judicial control. While it may be true, as counsel say, that by the simple process of taking a county from one district and adding it to another and adjoining district there would be a nearer approach to equality of population and perfect compactness of territory, still we can not hold the act to be void on that ground, (nor did we so say in the other case,) when it appears that the definite limitations fixed by the constitution have been observed, and there has been an approach toward equality as determined by the ratio, and the district is in some degree compact. Beyond this, where the question is one of degree only, the judgment of the legislature, when exercised, is final. In other words, we have no judicial power to control an act of the legislature which the constitution has left to its discretion and judgment. The constitution is a limitation, and not a grant, of legislative power, and where it does not put a limit to the discretion of the General Assembly the courts cannot do so. Within the constitutional limitations, express and implied, as stated, when by the passage of the act the General Assembly has determined that the districts as formed contain, "as nearly as practicable, an equal number of inhabitants," that determination is final and can not be reversed by the courts. Such was the holding in the *Thompson case*, and it is in full accord with the doctrine of this court announced in many cases respecting the distribution of the powers of government between the legislative, the executive and the judicial departments.

The prayer for a writ of *mandamus* must be denied.

*Writ denied.*