(No. 33838.— )

EDWARD V. DONOVAN, JR., Appellant, *vs.* SIDNEY T. HOLZMAN *et al.*, Appellees.

*Announced January 19, 1956—Opinion filed February 28, 1956.*
*Rehearing denied March 21, 1956.*

THOMAS P. HENEHAN, of Chicago, (WILLIAM J. ISAAC-SON, and EDWARD V. DONOVAN, JR., both of Chicago, of counsel,) for appellant.

THEODORE J. ISAACS, and JEROME F. DIXON, both of Chicago, for appellees.

LATHAM CASTLE, Attorney General, of Springfield, (WILLIAM C. WINES, of counsel,) *amicus curiae*.

Mr. JUSTICE DAVIS delivered the opinion of the court:

This case brings before this court the question of the constitutionality of "An Act to apportion the State of Illinois into senatorial and representative districts and to repeal an Act herein named," (Ill. Rev. Stat. 1955, chap. 46, pars. 158—1 to 158—8, inclusive,) commonly referred to as the Reapportionment Act.

The plaintiff filed his complaint for declaratory judgment against defendants as members of the Board of Elec-

tion Commissioners of the city of Chicago seeking a determination that the Reapportionment Act was in violation of sections 6, 7, and 8 of article IV of the Illinois constitution; that no valid senatorial districts were created by said act; and that no valid primary or general elections may be held thereunder.

By the complaint, the plaintiff alleged his interest as a taxpayer and registered voter residing in the city of Chicago; set forth the senatorial districts created in the city of Chicago by the said Reapportionment Act, and alleged that said act was *per se* unconstitutional and void for two reasons: (1) the senatorial districts sought to be created in the city of Chicago are not compact, and (2) they are not uniform in area; and that the sections of said act purporting to reapportion the State into representative districts were unconstitutional and void in that the act is incomplete, the General Assembly having failed to reapportion the State into valid senatorial and representative districts in a single act as required by section 8 of article IV of the State constitution. By their answer, defendants admitted the senatorial districts were created as alleged but denied their invalidity. At the trial the matter of the plaintiff's interest was stipulated, and the only evidence adduced was that of a map-engineering draftsman and a registered engineer who identified maps offered in evidence and testified that the city of Chicago could be divided into 18 divisions, substantially equal in area without cutting through blocks or houses. On this record judgment was entered for the defendants declaring the Reapportionment Act of 1955 constitutional. From this judgment plaintiff appeals to this court, the constitutionality of a statute being directly involved. *Prohm v. Non-High School Dist. No. 216, 7 Ill.2d 421.*

On the record before us we are concerned solely with the question of whether the senatorial districts created by

the Reapportionment Act of 1955 are, on their face, so violative of the constitutional mandate as to render the act unconstitutional.

A determination of this question first requires a consideration of the language of section 6 of article IV of the constitution of 1870 and a history of the creation of the senatorial districts thereunder. It provided that the General Assembly should apportion the State every ten years beginning with 1871, by dividing the population as ascertained by the Federal census by the number 51, and that the quotient should be the ratio of representation in the senate, and that the State should be divided into 51 senatorial districts and that they should "be formed of contiguous and compact territory, bounded by county lines, and contain as nearly as practicable an equal number of inhabitants; but no district shall contain less than four-fifths of the senatorial ratio. Counties containing not less than the ratio and three-fourths, may be divided into separate districts, and shall be entitled to two senators, and to one additional senator for each number of inhabitants equal to the ratio contained by such counties in excess of twice the number of said ratio." Both senators and representatives were chosen from the senatorial districts thus created.

The legislature last obeyed this constitutional mandate by the Reapportionment Act of 1901. By that act Cook County was given 19 senatorial districts compared with 32 downstate. In the ensuing years Cook County's population increased from 1,838,735 to 4,508,792, compared with an increase downstate from 2,982,815 in 1900 to 4,203,384 in 1950.

The increasing inequality in representation caused by the shift in population coupled with legislative unwillingness to meet the constitutional requirement of reapportionment led to numerous attempts to force redistricting. This court decided as early as 1895 that it was without power to compel the legislature to act affirmatively to perform its

constitutional duty, (*People ex rel. Woodyatt* v. *Thompson*, 155 Ill. 451,) and has repeatedly reaffirmed this view, (*People ex rel. Fergus* v. *Blackwell*, 342 Ill. 223; *Fergus* v. *Kinney*, 333 Ill. 437; *Fergus* v. *Marks*, 321 Ill. 510,) as have the Federal courts. *Keogh* v. *Neely*, 50 F.2d 685; *Colegrove* v. *Green*, 328 U.S. 549.

This reluctance to redistrict can be attributed almost entirely to the fact that the General Assembly was opposed to giving control of both houses of the legislature to population-heavy Cook County. (Witwer, The Blue Ballot, p. 4; Wham and Sprecher, Solution of the Problem of State Legislative Representation, Chicago Bar Record, Nov. 1948.) As a result, redistricting was held up until a satisfactory compromise between Cook County and downstate Illinois could be achieved. In deliberating the so-called "Blue Ballot" amendment of sections 6, 7 and 8 of article IV of the constitution, the legislature considered at least nine different plans of apportionment. (Legislative Apportionment in Illinois, Publication 112, Illinois Legislative Council, 1952.) Their debate and reflection resulted in the adoption of the present section 6 of artice IV which reads as follows:

"The General Assembly in 1955 shall redistrict the state for the purpose of electing state senators. There shall be fifty-eight senatorial districts. Cook county shall have twenty-four of the districts. These twenty-four districts shall be located as follows: Eighteen in the territory that is within the present corporate limits of the city of Chicago; and six in the territory that is in Cook county outside such corporate limits. The remaining one hundred and one counties of the state shall have thirty-four of the senatorial districts.

"All senatorial districts shall be formed of contiguous and compact territory. In their formation, area shall be the prime consideration.

"The senatorial districts shall be numbered one, two,

three, and so forth, including fifty-eight. Each such district shall elect one senator, whose term of office shall be four years. Senators elected in districts bearing even numbers shall be elected in 1956 and every four years thereafter; and senators elected in districts bearing odd numbers shall be elected in 1958 and every four years thereafter."

The proposed amendment was approved by the voters at the general election on November 2, 1954. The official statutory explanation of the proposed amendment given to the voters is clearly an aid in determining the meaning of the amendment. That explanation reads as follows:

"The Constitution now requires legislative districts to be based solely on population. This has proved unworkable ever since the 1910 census because a valid redistricting would have given the single county of Cook a majority in both houses of the General Assembly.

"The proposed amendment offers a solution. Representation in the House of Representatives is to be based upon population, and as long as Cook county has a majority of the population, it will have a majority of the seats in the House. Representation in the Senate, on the other hand, is to be based on area in such a manner that the remaining 101 counties are guaranteed a majority in the Senate.

"This amendment follows the system which the founding fathers wrote into the national constitution and which has proved so successful in the case of Congress. There the House of Representatives is based on popular representation and the Senate is based on a form of area representation, similar in principle to what is proposed for Illinois.

"Illinois badly needs a legislative redistricting. The present districts stand as they were created half a century ago. As a result, serious inequalities of population have developed, not only as between Cook County and downstate, but even within these major areas of the State. The apportionment amendment tends to assure the people of a constitutional districting because if the General Assembly fails to act, a commission is provided; and if the commission fails to act, legislators will be elected at large.."

The sole question put to us is whether the senatorial districts created within the corporate limits of the city of Chicago, as shown by the map on page 94 of this opinion,

on their face violate the constitutional mandate that they "shall be formed of contiguous and compact territory," and that "In their formation, area shall be the prime consideration."

At the outset, we think it clear that this court has the power to strike down an apportionment act which is violative of the clear requirements of the constitution. While we cannot exercise legislative powers or compel their proper action, the judiciary has always had the right and duty to review all legislative acts in the light of the provisions and limitations of our basic charter. The mere fact that political rights and questions are involved does not create immunity from judicial review. (*Marbury* v. *Madison*, 5 U.S. 137; *People ex rel. Mooney* v. *Hutchinson*, 172 Ill. 486; *People ex rel. Woodyatt* v. *Thompson*, 155 Ill. 451; Anno. *2* A.L.R. 1337.) However, this historic function does not give us the right to indirectly exercise the legislative function by striking down a redistricting merely because we conceive that it might have been done better. The complicated considerations involved require careful study and a weighing of factors. We believe a standard of review, as accurate as possible, was set down by this court in *People ex rel. Woodyatt* v. *Thompson*, 155 Ill. 451, on page 480, where we said: "There is a vast difference between determining whether the principle of compactness of territory has been applied at all or not, and whether or not the nearest practical approximation to perfect compactness has been attained. The first is a question which the courts may finally determine; the latter is for the legislature."

We do not suggest that this is an easy standard to apply in all cases. Justice Peckham, considering a New York apportionment act, put the problem well when he said: "We have no trouble whatever in detecting the difference between noon and midnight; but the exact line of separa-

tion between the dusk of the evening and the darkness of advancing night is not so easily drawn." *People* v. *Board of Supervisors,* 138 N.Y. 95, 33 N.E. 827.

Mindful of the inherent difficulty of our task, we consider the specific attacks upon the creation of the senatorial

MAP SHOWING
SENATE DISTRICTS
IN THE CITY OF CHICAGO
AS CREATED BY
HOUSE BILL NO. 1123

AREA SHOWN IN
SQUARE MILES

MAP SUBMITTED BY PLAINTIFF'S COUNSEL ILLUSTRATING THAT THE TERRITORY COMPRISING THE CITY OF CHICAGO ON NOVEMBER 2, 1954 MAY READILY BE DIVIDED INTO 18 COMPACT SEGMENTS OF UNIFORM SIZE

AREA SHOWN IN SQUARE MILES

districts here involved. It is alleged that they are not compact and that they are not equal in area. Upon the record before us we have only the outline of the actual districts to consider. We have no evidence in the record to indicate existing ward or precinct boundaries, arterial highways, parks, forest preserves, railroad yards, lakes, rivers, canals and waterways, large industrial and commercial areas, natural or artificial boundaries within the city, transporta-

tion facilities, and other of the vast spectrum of factors that might militate against laying out the city of Chicago in equal districts as suggested by plaintiff (see map on p. 95) and we do not have judicial knowledge of such matters. Nor is there any evidence in the record to indicate that the legislature gave "prime consideration" to population, ethnic groups or the preservation of political sinecures rather than area. And as stated in *People ex rel. Woodyatt* v. *Thompson*, 155 Ill. 451, at page 469, "We are not at liberty to inquire into the motives of the legislature. We can only examine into its power under the constitution." Likewise, a determination by the legislative branch of the government is presumed to be supported by facts known to it unless facts judicially known or proved preclude that possibility, (*Clark* v. *Gray*, 306 U.S. 583; *South Carolina State Highway Dept.* v. *Barnwell Bros.* 303 U.S. 177,) and the presumptions are in favor of the constitutionality of a law passed by the legislature, and the courts will, if possible, give it such construction as will enable it to have effect. *People ex rel. Woodyatt* v. *Thompson*, 155 Ill. 451; *People ex rel. Mooney* v. *Hutchinson*, 172 Ill. 486.

We know that House Bill No. 1123 (Ill. Rev. Stat. 1955, chap. 46. pars. 158—1 to 158—8 inclusive) was introduced May 24, 1955, and was thereafter amended, debated and then subjected to conference committees and finally approved on June 28. We further know that the General Assembly that proposed the reapportionment amendment to the constitution was substantially the same as the one that passed the Reapportionment Act, and presumably understood its limitations. They considered, debated and adopted the act and thereby construed it to comply with the constitution. That fact is entitled to consideration, (*Mitchell* v. *Lowden*, 288 Ill. 327; *City of Chicago* v. *McCoy*, 136 Ill. 344,) although it is not determinative. *Marbury* v. *Madison*, 5 U.S. 137; *Wolfson* v. *Avery*, 6 Ill.2d. 78.

On this record we cannot conclude that the legislature did not apply the principal of compactness nor give "prime consideration" to area. The very use of the word "prime" negates the meaning "sole" which plaintiff seeks to read into the constitution. Rather, it affirmatively suggests that other proper considerations might be applied which could lead to less than perfect symmetry and division. Since there is no evidence in this record, other than the maps in question, to rebut the assumption that proper consideration motivated the legislature (*People ex rel. Mooney v. Hutchinson,* 172 Ill. 486,) and that area was given prime consideration, we must hold that the Reapportionment Act is not void on its face. It is clear that the purpose of the separate senatorial and representative districts was to insure popular representation in one house, and insure downstate control in the other. This has been accomplished, and there is no evidence to indicate that it was attained in violation of the constitutional mandate.

Accordingly, the judgment of the trial court must be affirmed.

*Judgment affirmed.*