LAWRENCE DIAMOND, Plaintiff-Appellee, *v.* THE BOARD OF FIRE AND POLICE COMMISSIONERS OF ELK GROVE VILLAGE *et al.*, Defendants-Appellants.

First District (2nd Division)  No. 82—1683

Opinion filed May 31, 1983.—Rehearing denied June 30, 1983.

Samelson, Knickerbocker & Schirott, and Peter A. Felice, both of Chicago (George B. Knickerbocker, of counsel), for appellants.

Thomas F. McGuire, of Chicago, for appellee.

JUSTICE STAMOS delivered the opinion of the court:

The Board of Fire and Police Commissioners of Elk Grove Village, Illinois, appeals from the circuit court's reversal of its order discharging plaintiff Lawrence Diamond from his position as a police officer of the village. The administrative complaint against plaintiff which was brought before the board contained extensive references to the results of two polygraph examinations which were taken by plaintiff during the course of the investigation of the charges that led to his dismissal, but no evidence concerning those examinations was received by the board during the hearings on the complaint. Before this

court, the board contends that: (1) the trial court erred in reversing its order because the order was supported by other competent evidence and the polygraph results were not admitted into evidence before the board, and (2) the trial court erred in remanding the case for a new hearing before a specially constituted board of fire and police commissioners.

On August 17, 1981, the police chief of Elk Grove Village filed a complaint against plaintiff before the Village Board of Fire and Police Commissioners. The complaint alleged that on June 27, 1981, plaintiff was on patrol in a squad car when he observed a large number of cars near the home of John Coffman. He stopped to speak with the person who was parking the cars in a vacant lot and was informed that the cars belonged to guests at a party at the Coffman house. He went to the Coffman house, where he encountered John Coffman in the front yard.

While speaking with Coffman, plaintiff heard music coming from the backyard. Plaintiff asked Coffman if he had an amplifier permit for the loudspeaker system, and Coffman asked if one was necessary. Plaintiff stated that one was, and said that he could take care of it. Coffman took a $20 bill from his pocket and gave it to plaintiff, who placed the bill in his pocket. Plaintiff then went back to his squad car. He never gave Coffman a permit or processed an application for one. Elk Grove Village does not require a permit for music played on loudspeakers on private property.

During the investigation of the charges summarized above, the police chief ordered plaintiff to submit to a polygraph examination. The results of the tests and the remarks of the examiners were included in the chief's complaint to the board. The complaint states that plaintiff took his first polygraph examination on August 6, 1981, and that the examiner's report stated that plaintiff engaged in "purposeful acts of non-cooperation" during the test and that "it has been the experience of this laboratory that when a subject attempts to distort his polygraph records by purposeful non-cooperation, he does so to avoid detection regarding one or more of the issues under investigation." The complaint states that plaintiff was ordered to submit to an examination by a different examiner, and quotes the second examiner's report to the effect that when plaintiff was questioned regarding whether he had solicited or received $20 from Coffman and whether he had told Coffman that an amplifier permit was required, plaintiff answered in the negative. The report states that there were emotional responses "indicative of deception" during the test, and that the examiner was of the opinion that plaintiff solicited and received the $20

from Coffman. The full report was attached to the complaint as an exhibit.

At the hearings on the complaint, plaintiff objected to the introduction of any testimony referring to the polygraph examinations. The objection was sustained by the village attorney, who stated that "*** it would be my feeling that there would be no weight given to such testimony and no value to it. Therefore, on that basis, I believe the Board should sustain that objection."

Coffman was the only occurrence witness testifying against plaintiff. His testimony paralleled the allegations of the complaint regarding his encounter with plaintiff. Plaintiff testified that he had not solicited the money from Coffman and that he received no money from Coffman.

On October 6, 1981, the board rendered its findings and decision discharging plaintiff from employment as a police officer. Those findings make no reference to the polygraph results.

On administrative review, the circuit court reversed the order of the board, holding that the inclusion of the information concerning the results of the polygraph examinations fatally tainted the board's decision. The court noted that the board, which was composed of laymen, was never admonished not to consider the results of the tests and that there was no indication that the results were not considered by the board in making its decision. The court also expressed the opinion that the order was otherwise not against the manifest weight of the evidence. The circuit court remanded the case for a new hearing before a specially constituted board of fire and police commissioners.

On appeal to this court, the board contends that: (1) its order should not have been reversed because plaintiff's objections to the introduction of the polygraph-related evidence were sustained and the order was not against the manifest weight of the evidence which was received, and (2) the circuit court has no authority to order the appointment of a special board of fire and police commissioners to hear this case on remand.

During the pendency of this appeal, our supreme court handed down its decision in *Kaske v. City of Rockford* (1983), 96 Ill. 2d 298. In that consolidated case, the plaintiffs, Robert Collura, John Kaske, and Paul Triolo, were all police officers who were ordered to submit to polygraph examinations as part of investigations of their activities which were being conducted by their respective chiefs of police. Kaske and Triolo refused to undergo the examinations and filed an action for declaratory judgment and injunction which sought to restrain their

police chief from requiring the examinations. The circuit court dismissed the action and the appellate court affirmed. Collura took a polygraph examination, and the results were admitted into evidence before the Board of Fire and Police Commissioners through the testimony of the polygraph examiner. The board ordered that Collura be discharged from employment as a police officer, and that order was affirmed by the circuit court and the appellate court. Both appellate court orders were issued pursuant to Supreme Court Rule 23 (87 Ill. 2d R. 23).

On appeal to our supreme court, the court first noted that there has been a split among the districts of the appellate court concerning the admissibility of polygraph results in administrative proceedings. Such results have been held to be admissible in the First District (see *Washington v. Civil Service Com.* (1981), 98 Ill. App. 3d 49, 423 N.E.2d 1136), while they have been held to be inadmissible in the Third (see *Manias v. Peoria County Sheriff's Department Merit Com.* (1982), 109 Ill. App. 3d 700, 440 N.E.2d 1269; *Sommer v. Goetze* (1981), 102 Ill. App. 3d 117, 429 N.E.2d 901), and Fourth (see *McGowen v. City of Bloomington* (1981), 99 Ill. App. 3d 986, 426 N.E.2d 328) districts. The court then reviewed its prior holdings that polygraph evidence is inadmissible in criminal trials even though it is stipulated to (see *People v. Baynes* (1981), 88 Ill. 2d 225, 244-45, 430 N.E.2d 1070), and that polygraph evidence is inadmissible in death sentencing hearings despite the relaxation of the rules of evidence in those proceedings. See *People v. Szabo* (1983), 94 Ill. 2d 327, 362-63.

The court held that, as to Collura, it was reversible error to receive the polygraph results into evidence before the board, and, as to Kaske and Triolo, that a police officer may not be ordered to submit to a polygraph examination and the refusal to take such an examination can not be the basis for disciplinary proceedings. In so holding, the court stated that:

"The plaintiffs face the potential of the loss of their livelihood. There is a real danger that the board of fire and police commissioners will find the results of the polygraph examination completely determinative of guilt or innocence. We feel that the *Sommer* case [*Sommer v. Goetze* (1981), 102 Ill. App. 3d 117, 429 N.E.2d 901] articulates the correct rule that polygraph evidence is not reliable enough to be used as substantive evidence in an administrative proceeding before the board. The findings before a board of fire and police commissioners must be based upon facts proved by competent evidence." *Kaske v. City of Rockford* (1983), 96 Ill. 2d 298, 309.

As was previously noted, the results of Collura's polygraph examination were admitted into evidence through the testimony of the polygraph examiner. In the instant case, the test results were not formally introduced as evidence at all, but were included in paragraphs 13 through 17 of the chief's complaint to the board. Therefore, while the board was fully aware of the results of plaintiff's test, he had no opportunity to counter the prejudicial effect of that knowledge through cross-examination or otherwise, and although plaintiff successfully objected to the presentation of the evidence at the hearings, he could do little to erase the knowledge of the test results from the minds of the board members.

The case of *Austin v. City of East Moline Board of Fire & Police Commissioners* (1972), 7 Ill. App. 3d 537, 288 N.E.2d 39, also presented a situation where the board was aware of the results of a polygraph examination taken by the officer under investigation although the results were not introduced as evidence. The court found that there was no reversible error in that case because the board had been admonished to disregard the polygraph results at least five times. (7 Ill. App. 3d 537, 542.) The court held that these admonitions cured any error that may have resulted from the board's extrajudicial knowledge of the tests. 7 Ill. App. 3d 537, 543.

No curative remarks were made to the board in the instant case. After plaintiff's objections to references to the tests were sustained, the village attorney stated that:

> "Then it would be my feeling that there would be no weight given to such testimony and no value to it. Therefore, on that basis, I believe the Board should sustain that objection."

It is impossible to say that the board members considered themselves admonished to refrain from considering the test results by that remark. This is especially so when it is considered that the objection that preceded that statement was to a question asked of the police chief as to whether plaintiff had been ordered to take a polygraph examination. No reference to the results of the tests was made at any time during the hearings, except for the statement made by the attorney for the village that he did not intend to introduce the results or call the examiner as a witness.

The circumstances presented by the board's extraneous knowledge of the results of Officer Diamond's polygraph examination are analogous to situations where, in a judicial proceeding, the fact finder is apprised of matters pertaining to issues involved in the case before it through independent investigation or through other means. The board, while making findings of fact concerning charges against a po-

lice officer and deciding whether those charges justify dismissal, is exercising a judicial function. The instant board is composed entirely of laymen, and their function partakes of the nature of the function of both a judge and a jury.

Many cases, both civil and criminal, have addressed the problem raised by a showing that extraneous information has reached the fact finder. Our supreme court has stated that "[i]t is axiomatic that any unauthorized information reaching the jury is prejudicial error." (*People v. Rivers* (1951), 410 Ill. 410, 419, 102 N.E.2d 303.) A showing that the fact finder relied on unauthorized information in reaching its decision has been held to be reversible error in a plethora of cases, involving both bench trials (see *People v. Wallenberg* (1962), 24 Ill. 2d 350, 354, 181 N.E.2d 143; *People v. Rivers* (1951), 410 Ill. 410, 418-19, 102 N.E.2d 303; *Drovers National Bank v. Great Southwest Fire Insurance Co.* (1977), 55 Ill. App. 3d 953, 956-59, 371 N.E.2d 855; *Johnson v. Johnson* (1975), 34 Ill. App. 3d 356, 363-64, 340 N.E.2d 68; *McGurn v. Brotman* (1960), 25 Ill. App. 2d 294, 298-99, 167 N.E.2d 12) and jury trials (see *People v. Holmes* (1978), 69 Ill. 2d 507, 519, 372 N.E.2d 656; *Frede v. Downs* (1981), 101 Ill. App. 3d 812, 815, 428 N.E.2d 1035; *Heaver v. Ward* (1979), 68 Ill. App. 3d 236, 241-42, 386 N.E.2d 134).

Our supreme court has stated that although unauthorized information reaching a jury is always prejudicial, such error does not always require reversal. (*People v. Holmes* (1978), 69 Ill. 2d 507, 519, 372 N.E.2d 656.) The same holds true for nonjury cases, because a trial judge sitting without a jury is presumed to have considered only competent evidence in reaching his decision. (See *Reese v. Melahn* (1973), 53 Ill. 2d 508, 512, 292 N.E.2d 375.) It is clear that an administrative body must be regarded as more closely akin to a jury on review of decisions where incompetent evidence reaches the body, because there is no presumption that the body has considered only competent evidence. In such situations the reviewing court must search the record to determine whether there is enough competent evidence to support the decision. *Consolidation Coal Co. v. Property Tax Appeal Board* (1975), 29 Ill. App. 3d 465, 468, 331 N.E.2d 122.

In the instant case, even if the polygraph results had been admissible in the hearing, those results could only be considered by the board after they were received into evidence, with the proper foundation being laid through direct examination of the polygraph examiner who administered the test. (See *Washington v. Civil Service Com.* (1981), 98 Ill. App. 3d 49, 54, 423 N.E.2d 1136.) This process, of course, allows the accused to cross-examine the examiner as to his

qualifications, the manner in which the tests were conducted, and the basis of his interpretation of the tests. The precise reason that polygraph evidence is inadmissible in an administrative proceeding is that the results of the tests are susceptible to a wide variety of interpretations, and therefore the examiner's opinion has a prejudicial effect which is disproportionate to its probative value. (See *Kaske v. City of Rockford* (1983), 96 Ill. 2d 298, 309.) The instant case presents a situation where inadmissible matter was known to the fact finder and the accused was not afforded the opportunity to attempt to dissipate the unfairly prejudicial effect of that information. Our supreme court has held that a denial of this opportunity operates as a denial of the due process right of the accused to "rely upon his constitutional guarantee that nothing shall be considered against him except the competent evidence introduced in open court, in his presence, by the witnesses who confront him." (*People v. Rivers* (1951), 410 Ill. 410, 417, 102 N.E.2d 303.) There is no burden on the accused to show that there is prejudice resulting from the jury's knowledge of extraneous matter. (410 Ill. 410, 416-17.) Reversal of the verdict is required if the extraneous matter is "in the nature of evidence *** on a crucial question" in the case. *Frede v. Downs* (1981), 101 Ill. App. 3d 812, 815, 428 N.E.2d 1035; see also *People v. Holmes* (1978), 69 Ill. 2d 507, 519, 372 N.E.2d 656.

In the majority of the cases cited above, the extraneous evidence considered by the fact finder was matter that would have been admissible had it been properly introduced. In the instant case, of course, the information known to the fact finder was inadmissible for any purpose. As we have noted, the precise reason for the strict rule against the use of polygraph results as evidence is that the test is of indifferent scientific validity and what accuracy it has is completely dependent on a highly subjective interpretation of the data produced by the test. (See generally *People v. Baynes* (1981), 88 Ill. 2d 225, 234-37, 430 N.E.2d 1070.) Had the results of the tests been received by the board, with full observation of the procedural safeguards attendant to the proper admission of evidence, we would be required to reverse the board's decision under *Kaske*. We note that in *Kaske*, our supreme court did not conduct a search of the record to determine whether the board's decision as to Collura was supported by competent evidence apart from the polygraph results. We can only conclude that the holding in that case must be regarded as a strict rule that the consideration of polygraph evidence is so prejudicial that the board's decision must be reversed regardless of what other evidence was considered. It would be anomalous, to say the least, to find that

when information is obtained by the board in a manner that violates the accused's right to due process of law, the board's decision will stand if it is not against the manifest weight of the evidence in the record, while the admission of that evidence in full observance of due process safeguards would require reversal of the decision without an examination of the other evidence in the record.

In the instant case, plaintiff's attorney made no attempt to have the reference to the polygraph results stricken from the chief's complaint. Plaintiff contends that such a motion would have been futile, because the members of the board had already seen the complaint by the time such a motion could have been made. Be that as it may, a motion to strike the offending paragraphs in the complaint would at least have led to an express admonition to the board not to consider the polygraph results in making their decision. As the trial court noted, the members of the board are all laymen, and lack the experience and training of a judge in disregarding incompetent evidence. The chief's attorney tenaciously questioned the chief as to whether he had ordered plaintiff to take a polygraph examination, even after an objection to the question had been sustained by the village attorney. These questions also came after the chief's attorney had conceded that he had no intention of introducing the test results or of calling the examiner as a witness. We see that line of questioning as having the effect of drawing the board's attention to the fact that an examination was administered, and therefore no board member can be thought to have overlooked the information in the complaint concerning the results of the tests.

■■ Plaintiff here was deprived of due process of law by the board's extraneous knowledge of information going to the most crucial aspect of this case, his credibility. No situation can be imagined in which the board's extraneous knowledge of unfavorable polygraph results would be more prejudicial to the person under investigation. Such a situation could conceivably require reversal of the board's decision regardless of the character of the information involved. Here, the information involved is inadmissible as evidence for any purpose, and the observance of procedural safeguards could not have authorized the board to consider it. A simple and strongly worded admonition would have cured the prejudice resulting from the board's extraneous knowledge of the polygraph examination. In the absence of such an admonition, the board's decision must be reversed.

■■ The board also contends that the trial court erred in ordering that the new hearing in this matter be conducted before a specially constituted board of fire and police commissioners. Plaintiff and the

board agree that the appointment and removal of board members is governed by the provisions of division 2.1 of article 10 of the Illinois Municipal Code (Ill. Rev. Stat. 1981, ch. 24, par. 10—2.1—1 *et seq.*), which contains no provision for the appointment of a special board for hearings on particular matters, and which provides that members of the board can be removed only for cause upon written charges by the governing body of the municipality. Ill. Rev. Stat. 1981, ch. 24, par. 10—2.1—3.

Plaintiff contends that the court is authorized to appoint a special board because a home-rule unit such as Elk Grove Village is not bound by the provisions of that statute and may provide for the appointment of board members in ways which are at variance with the statute.

A home-rule municipality may adopt an ordinance for the appointment of fire and police commissioners which is in direct conflict with section 10—2.1—3. (See *Stryker v. Village of Oak Park* (1976), 62 Ill. 2d 523, 527, 343 N.E.2d 919, *cert. denied* (1976), 429 U.S. 832, 50 L. Ed. 2d 97, 97 S. Ct. 95.) However, it is not contended that Elk Grove Village has adopted an ordinance which provides for the appointment of a special board. The question before us, then, is not whether Elk Grove Village is empowered to enact such an ordinance, but whether the circuit court can order it to do so. We hold that it cannot.

Our supreme court has stated that the courts "cannot exercise legislative powers or compel their proper action" (*Donovan v. Holzman* (1956), 8 Ill. 2d 87, 93, 132 N.E.2d 501), and that "[t]he courts can neither dictate nor enjoin the passage of legislation." *Fletcher v. City of Paris* (1941), 377 Ill. 89, 96, 35 N.E.2d 329.

In the instant case, any procedure by which the village could appoint a special board would have to be adopted by ordinance. We hold that the circuit court has no power to dictate that such an ordinance be adopted, and that that portion of the circuit court's order which remands this cause to be heard by a specially constituted board of fire and police commissioners is reversed.

It is true that there is a possibility that plaintiff will be prejudiced by a new hearing before the board members who are already aware of the polygraph results. However, that prejudice can be cured by admonishing the board that those results are not to be considered. At any rate, the remedy for any unfairness which may result on rehearing is not the appointment of a special board, but an administrative review of that rehearing. See *Mank v. Board of Fire & Police Commissioners* (1972), 7 Ill. App. 3d 478, 486, 288 N.E.2d 49.

For the reasons expressed herein, the circuit court's reversal of

the board's findings and decision is affirmed, the circuit court's order that a specially constituted board hear the case on remand is reversed, and the cause is remanded to the circuit court with instructions to remand the case to the board for a hearing *de novo* at which no evidence concerning the polygraph tests shall be admitted and at which the board shall be admonished to disregard their prior knowledge of the polygraph results in making their decision.

Affirmed in part; reversed in part; and remanded with directions.

DOWNING, P.J., and PERLIN, J., concur.