ROBERT COLLURA, Plaintiff-Appellant, v. THE BOARD OF POLICE COMMISSIONERS OF THE VILLAGE OF ITASCA *et al.*, Defendants-Appellees.

Second District   Nos. 84—0275, 84—0317 cons.

Opinion filed August 13, 1985.

828

Thomas J. Heneghan, William P. Jones, and Michael J. Murray, all of Rock, Fusco, Reynolds & Heneghan, of Chicago, for appellant.

James R. Schirott and John T. Elsner, both of Schirott & Elsner, of Itasca, and Thomas F. McGuire & Associates, Ltd., of Long Grove, for appellees.

JUSTICE LINDBERG delivered the opinion of the court:

Plaintiff Robert Collura (Collura) appeals from an order of the circuit court of Du Page County affirming the decision of the Itasca board of fire and police commissioners (board) discharging Collura from the Itasca police department. Collura asserts five bases for reversal of the trial court order: (1) a board member's failure to recuse herself and the board's failure to disqualify her denied Collura a fair and impartial hearing; (2) the board's termination decision was contrary to the manifest weight of the evidence; (3) the board erred in refusing to admit as judicial admissions closing argument statements made by the attorney for Stanley J. Rossol, the chief of police of the village of Itasca (chief) during the first hearing; (4) the board violated Collura's due process rights by using the finding of probable cause made prior to his first hearing as the basis for conducting the second hearing; and (5) the trial court erred in denying his motion for findings of fact and conclusions of law. Because we find no reversible errors, we affirm.

This case involves a second appeal filed by Itasca police officer Collura concerning his discharge from the Itasca police department. A brief recitation of the procedural history of the case will facilitate disposition of the issues presented. On January 26, 1980, the chief filed charges before the board against Collura. The chief's complaint alleged that Collura while on duty had on the evening of December 27,

1979, made improper physical contact with Alicia Martinez (Martinez).

During the investigation of Martinez' allegations, Collura was ordered to submit to a polygraph examination or face disciplinary action. The results of Collura's test were admitted at the hearing before the board and the polygraph examiner was called as an expert witness. The board found Collura guilty of the charges and ordered his discharge. Collura sought administrative review of the board's order and both the circuit and appellate courts affirmed the decision discharging Collura. On appeal, the supreme court reversed the decision of the appellate court, concluding that the admission of the polygraph results and expert testimony concerning the polygraph procedure necessitated remandment for a new hearing. See *Kaske v. City of Rockford* (1983), 96 Ill. 2d 298.

On January 26, 1983, the board held a meeting at which the parties presented argument on the proper scope of the remandment hearing. At this meeting, Collura filed a motion for immediate reinstatement and/or for a probable cause hearing to determine whether formal charges should be refiled against Collura. The board denied the motion and allowed the chief leave to file an amended complaint.

On February 21, 1983, the board considered a petition filed by Collura for the recusal or disqualification of board commissioner Nancy Fedor (Fedor) because of her membership on the board during Collura's first hearing, at which the polygraph results were admitted into evidence. After argument, Fedor refused to recuse herself from the hearing and the board denied the motion for disqualification.

The second hearing was held on March 21, 1983. The testimony consisted principally of four witnesses: Collura, Martinez, Officer Hansen, and Officer Mickow, all of whom were at the scene of the incident during at least a portion of the relevant time period on the night in question. At the completion of the testimony, the board entered its decision discharging Collura as a police officer of the village of Itasca.

On May 2, 1983, Collura filed a complaint for administrative review, and on February 23, 1984, the trial court affirmed the board's decision noting "that while it may have been the better course of action that Commissioner Fedor recuse herself from hearing the matter on remandment, the decision of the Defendant Board is not contrary to the manifest weight of the evidence." Collura thereafter filed a motion for a hearing on his earlier request for findings of fact and conclusions of law upon which the court's judgment was based. The trial court denied Collura's motion on March 13, 1984, and he thereafter filed a timely notice of appeal.

■ The first argument raised by Collura is that Fedor's refusal

to recuse herself from the second hearing and the board's refusal to disqualify her denied him his due process right to a fair and impartial hearing. In Illinois, the results of a polygraph examination are inadmissible to prove the guilt or innocence of a party in a criminal case. (*People v. Baynes* (1981), 88 Ill. 2d 225; Cleary & Graham, Illinois Evidence 150-51 (4th ed. 1984).) Such results are also inadmissible in administrative hearings. (*Kaske v. City of Rockford* (1983), 96 Ill. 2d 298, *cert. denied* (1983), 464 U.S. 960, 78 L. Ed. 2d 335, 104 S. Ct. 391; *Manias v. Peoria County Sheriff's Department Merit Com.* (1982), 109 Ill. App. 3d 700, 440 N.E.2d 1269.) Because Fedor was a member of the original board which was exposed to the polygraph results, Collura contends, she was required to recuse herself and her failure to do so necessitates remandment for a new hearing.

■ Members of an administrative agency, however, are not disqualified as decision makers merely because of their familiarity with the facts of the case gained by performance of their statutory roles. (*Hortonville Joint School District No. 1 v. Hortonville Educational Association* (1976), 426 U.S. 482, 49 L. Ed. 2d 1, 96 S. Ct. 2308.) Relying on the above-cited rule and *Diamond v. Board of Fire & Police Commissioners* (1983), 115 Ill. App. 3d 437, 450 N.E.2d 879, the board and the chief contend the trial court's ruling that recusal was not required is correct. In *Diamond*, the administrative complaint contained extensive references to the results of two polygraph examinations of the officer subject to discharge. Finding that the inclusion of the results in the complaint without curative admonishments tainted the administrative proceedings, the trial court reversed the officer's dismissal. On appeal, the appellate court affirmed the trial court's ruling reversing the police officer's dismissal. However, the appellate court in *Diamond* reversed the order that a specially constituted board be established to hear the cause on remand, and instead directed that on remand the hearing be held before the same board.

In concluding that the inclusion of the results in the administrative complaint was error, the *Diamond* court expressly noted that the board was not admonished to ignore the results and that such an admonishment, if given, would have cured the prejudice. (*Diamond v. Board of Fire & Police Commissioners* (1983), 115 Ill. App. 3d 437, 444, 450 N.E.2d 879, 885.) The *Diamond* court emphasized the absence of an admonishment to distinguish its facts from those in *Austin v. City of East Moline Board of Fire & Police Commissioners* (1972), 7 Ill. App. 3d 537, 288 N.E.2d 113, where the court concluded that admonishments were effective to cure the board members' knowledge of polygraph test results. In *Austin*, the officer was ac-

cused of taking a rifle from the wall of an office building while on duty and was required to submit to a polygraph examination during the investigation. While the members of the board had knowledge both of the examination and of its results, they were admonished at least five times to ignore the results in rendering their decision. The admonishments, the *Austin* court ruled, cured any reversible error resulting from the board members' awareness of the officer's test results. Although no admonishments were given in *Diamond*, the court apparently agreed with the result reached in *Austin*.

> "A simple and strongly worded admonition would have cured the prejudice resulting from the board's extraneous knowledge of the polygraph examination." 115 Ill. App. 3d 437, 444, 450 N.E.2d 879, 885.

■ The record indicates that the board members here did receive an adequate admonishment. Laurence Traeger, trial counsel for the board, stated in the record of the proceedings before the board after remand that copies of the supreme court's decision in *Kaske* were distributed to each of the board members prior to the second hearing. In that decision, the supreme court stated:

> "We remand Officer Collura's cause to the board of fire and police commissioners of the village of Itasca for a new hearing, in which any results of the police officer's polygraph examination, any opinions offered by the polygraph examiner, or any references to the polygraph examinations are inadmissible as evidence." (*Kaske v. City of Rockford* (1983), 96 Ill. 2d 298, 311-12.)

Counsel for the chief also admonished the board not to consider the polygraph results. These admonitions were clear, emphatic and sufficient to cure any prejudice resulting from knowledge of the test results.

■ Collura asserts that *Diamond* is distinguishable because that case requires the board to be admonished at the time of its exposure to the inadmissible evidence. The admonishment of Fedor in the instant case, Collura emphasizes, occurred upon remand, more than three years after she was initially exposed to the inadmissible test results. Collura interprets the admonishment requirement in *Diamond* too restrictively. While the facts in *Diamond* focus the court's attention on the curative effect of an admonishment given contemporaneous with the exposure to the inadmissible evidence, *Diamond* should not be read as precluding an admonishment given upon rehearing at the earliest moment after a judicial determination is made that certain evidence is inadmissible. Furthermore, we reject Collura's conten-

tion that the admonishment given in the instant case is less effective than the admonishment suggested in *Diamond*. Here, Fedor stated, the intervening three years had dimmed her memory of the facts and issues involved in the first hearing. An admonishment not to consider test results and evidence only faintly recalled can be no less effective than an admonishment not to consider evidence recently introduced to the fact finder. Therefore, Collura's effort to distinguish *Diamond* on the basis of the timing of the admonishment is unpersuasive.

■ The *Diamond* court recognized the potential conflict inherent in a remand to the same board which had been exposed initially to the test results, but rejected the contention that the board could not properly hear the case upon remand.

> "It is true that there is a possibility that plaintiff will be prejudiced by a new hearing before the board members who are already aware of the polygraph results. However, that prejudice can be cured by admonishing the board that those results are not to be considered. At any rate, the remedy for any unfairness which may result on rehearing is not the appointment of a special board, but an administrative review of that rehearing." (*Diamond v. Board of Fire & Police Commissioners* (1983), 115 Ill. App. 3d 437, 445, 450 N.E.2d 879, 886.)

Judicial review of the second hearing record, and not recusal of Fedor, therefore, is the appropriate protection against bias.

The *Diamond* court's conclusion that a board's exposure to tainted evidence does not in all circumstances bar it from later consideration of the same case is supported by the facts in *McCaffery v. Civil Service Board* (1955), 7 Ill. App. 2d 164, 129 N.E.2d 257, where a police officer's discharge was reversed by the trial court because the civil service board had been exposed to inadmissible hearsay. In remanding the case, the trial court directed the same board to exclude the hearsay from the record and to hear any new evidence offered by the parties. After the second administrative hearing, the officer was again discharged and the appellate court affirmed the discharge ordered by the civil service board. The initial trial court order remanding the cause to the civil service board with a direction to exclude the hearsay evidence from the record supports the conclusion here that Fedor was not required to recuse herself upon remand. *Cf. Washington v. Civil Service Com.* (1983), 120 Ill. App. 3d 822, 458 N.E.2d 952 (despite introduction of polygraph results before hearing officer which suggested the police officer's untruthfulness, court affirmed decision sanctioning police officer because hearing officer stated record contained enough evidence exclusive of the polygraph results to warrant

the sanctions).

Collura attempts to distinguish the instant case from *Diamond* by arguing that only Fedor was required to recuse herself and that the two remaining members, who had not participated in the first hearing, could have conducted the second hearing without Fedor. Collura's attempt to restrict the taint to Fedor is unpersuasive. Despite his unspecific allegations that Fedor was exposed to "highly prejudicial testimonial and documentary evidence," Collura principally complains about Fedor's knowledge that he failed his polygraph examination and that Martinez passed her examination. Collura suggests that Fedor was biased both by her exposure to the testimony of William T. Schreiber, then a staff polygraph examiner with John Reid & Associates who testified concerning his polygraph examination of Collura, and by her exposure to a three-page report written by Detective/Sergeant Peter S. Andersen of the Itasca police department. Andersen's report was received by the board only during the January 26, 1980, probable cause hearing and was not admitted at Collura's first or second discharge hearings. The testimony of Schreiber was introduced only at Collura's first discharge hearing. According to Collura's initial appellate brief, "[t]he extraneous facts to which the Board was exposed" from Andersen's report and Schreiber's testimony were "that Alicia Martinez had passed a polygraph examination and Officer Collura had failed his examination regarding the events which took place on December 27, 1979, in the parking lot of the Colonial Village Apartment Complex."

█ Initially, we note that while Collura intimates that Fedor was prejudiced because of her recollection of the test results, he has cited to no evidence in the record that Fedor had any memory of the polygraph examinations which had been conducted three years previously. In fact, Fedor expressly stated in addressing Collura's recusal motion filed on September 16, 1983, prior to the second discharge hearing that she did not recall the details of the first discharge hearing.

"After serious consideration, I would like to state that I decline to recuse myself from this Commission.

For three years I have been a member, and have had to act impartially in order to do this job.

I feel that I have done so in the past, and I can continue to do so in the future.

In reference to the Collura case, three years has dimmed my recollection of the matter.

I have had absolutely no reason to review the records concerning this case, and have not done so.

I firmly believe that I can judge this matter solely on the evidence put forth in a new hearing without any prejudice and bias, and I am willing to take an oath to affirm this."

Fedor's dim recollection makes unlikely any actual prejudice resulting from her participation during the second hearing. Absent a showing of bias, government administrators are presumed to be individuals of conscience and intellectual discipline capable of judging a particular controversy fairly on the basis of its own circumstances. See *Kaiser v. Dixon* (1984), 127 Ill. App. 3d 251, 267-68, 468 N.E.2d 822, 835.

Even if Fedor were prejudiced, however, Collura's motion to disqualify her filed before the new board and which cited by record reference Andersen's three-page report regarding the polygraph examinations of both Collura and Martinez exposed new board members Noel Lawson and Ken Morgan to the prejudicial information of which Collura now complains. While Collura's motion did not expressly state the results of the test, his description of the test results as "highly prejudicial and tainted extra-adjudicative and adjudicative facts which result in prejudice" made clear to the new board members that Collura had not passed and Martinez had passed their respective examinations. Because of their exposure to the test results through Collura's motion, recusal of all board members, and not just of Fedor, would have been required to purge the "taint" of the polygraph examinations. The new members' awareness of Collura's test results was reinforced by the submission to each board member of the supreme court's decision in *Kaske v. City of Rockford* (1983), 96 Ill. 2d 298, *cert. denied* (1983), 464 U.S. 960, 78 L. Ed. 2d 335, 104 S. Ct. 391, where in discussing the evidence heard by the first board, the court stated that "[t]he polygraph examiner testified that the plaintiff lied in answering questions concerning his alleged improper contact with Alicia Martinez." (96 Ill. 2d 298, 303.) In remanding the cause, the supreme court in *Kaske* made clear that the examiner's opinion testimony as well as the test results was inadmissible in the second hearing. Therefore, recusal of Fedor alone would have been insufficient to cure prejudice resulting from the new board members' awareness of the examiner's conclusion that Collura had lied when answering questions during his polygraph examination.

■ No mechanism is provided in the statute, however, for recusal of the entire board and employment of a special board. In rejecting the argument by the officer in *Diamond* that an entirely new board was required to hear his case upon remand, that court observed that division 2.1 of article 10 of the Illinois Municipal Code (Ill. Rev. Stat. 1983, ch. 24, par. 10—2.1—1 *et seq.*), which governs the employment

and removal of police and fire commissioners, "contains no provision for the appointment of a special board for hearings on particular matters." (*Diamond v. Board of Fire & Police Commissioners* (1983), 115 Ill. App. 3d 437, 445, 450 N.E.2d 879, 885.) Rather, the statute "provides that members of the board can be removed only for cause upon written charges by the governing body of the municipality." (115 Ill. App. 3d 437, 445, 450 N.E.2d 879, 885.) While the *Diamond* court acknowledged that (home rule) units may adopt an ordinance for the appointment of police and fire commissioners which is in direct conflict with section 10—2.1—3 (see *Stryker v. Village of Oak Park* (1976), 62 Ill. 2d 523, 527, *cert. denied*, 429 U.S. 832, 50 L. Ed. 2d 97, 97 S. Ct. 95), we take judicial notice of the fact that the village of Itasca is not and has never been a home rule unit. Absent the home rule election, the powers of the board are governed by the statute which as the *Diamond* court found contains no provision for appointment of a special board. Without either statutory authorization for a new board or a majority of the board members which is untainted by the polygraph results, the decision in *Diamond* and the rule of necessity required the board here to consider Collura's discharge on remand.

■ Finally, Collura contends that *Diamond* is not controlling because of the more recent authority of *People v. Taylor* (1984), 101 Ill. 2d 377. However, *Taylor* involved the significantly different question of whether a lay jury in a criminal trial exposed to polygraph results through extensive pretrial media coverage could set aside that knowledge and render an impartial verdict. Because of its highly dissimilar facts, *Taylor* does not affect the continuing viability of *Diamond*, and, therefore, the reasoning employed in *Diamond* supports our decision that Collura's rights were not violated by Fedor's presence on the board.

■■ The second argument raised by Collura is that the board's decision is internally inconsistent with the evidence and is against the manifest weight of the evidence. The findings of fact of an administrative agency are *prima facie* true and correct. (Ill. Rev. Stat. 1983, ch. 110, par. 3—110.) The function of the reviewing court is not to reweigh the evidence, but to ascertain whether the agency's decision is against the manifest weight of the evidence. (*Davern v. Civil Service Com.* (1970), 47 Ill. 2d 469, *cert. denied* (1971), 403 U.S. 918, 29 L. Ed. 2d 695, 91 S. Ct. 2229.) An administrative decision is not contrary to the manifest weight of the evidence merely because the reviewing court might have decided the case differently in the first instance. (*Zinser v. Board of Fire & Police Commissioners* (1961), 28 Ill. App. 2d 435, 172 N.E.2d 33.) An agency decision is not against

the manifest weight of the evidence unless an opposite conclusion is clearly evident. (*Carrao v. Board of Education* (1977), 46 Ill. App. 3d 33, 360 N.E.2d 536.) Conflicts in witness testimony do not constitute a sufficient reason to reverse an administrative agency's decision, since the agency's responsibility is to resolve the conflicting evidence. (*Crowell v. Police Board* (1975), 32 Ill. App. 3d 552, 336 N.E.2d 573.) When sufficient evidence in the record supports an administrative agency's findings, the decision will not be reversed. *Taylor v. Police Board* (1978), 62 Ill. App. 3d 486, 378 N.E.2d 1160.

■■ Collura first contests the board's finding that an eight-minute period from 10:03 p.m. until 10:11 p.m. afforded Collura "ample time for the improper physical touchings of Alicia Martinez ***." Collura appears to challenge the board's finding that an interval of eight minutes existed between Officer Hansen's departure from the scene and receipt of the call over Collura's car radio of a burglary in progress at a nearby Wickes Furniture Store. Introduced as a joint exhibit at the hearing was a transcription of the Itasca police department master recording of the radio conversations between the officers and the home base on December 27, 1979, from approximately 9:35 p.m. until 10:30 p.m. According to the log, the Wickes call came in at 10:09.19. Officer Hansen testified and the transcription confirms that he spoke with Collura at 10:02.35. Hansen stated that Collura requested over the radio that Hansen switch to channel 2, an unrecorded frequency, and then told Hansen: "[I]t's okay. She just got a little problem." Following their channel 2 radio conversation, Hansen testified he remained in the parking lot for approximately one minute and then drove away from the apartment complex. Collura argues this testimony establishes Hansen could not have left at 10:03 as the board found. Even if Hansen did leave at 10:04, however, there still remained five minutes within which the violation could have occurred. Therefore, the finding even if inaccurate, does not preclude the conclusion that Collura had the opportunity to commit the improper touching.

■■ Collura's main attack on Martinez' credibility is his contention that she gave conflicting testimony concerning the timing of the violation. Collura's first challenge to Martinez' testimony does not support his conclusion that her overall testimony is unworthy of belief. The transcription establishes that the events in question occurred approximately between 9:30 and 10:30 p.m. and that Officer Mickow left the apartment complex at approximately 9:45-9:55 p.m. However, as Collura emphasizes, Martinez on March 21, 1983, testified that Mickow left the complex between 8:30 and 8:45 p.m. A review of

the record reveals, however, that Collura's counsel, and not Martinez, suggested the 8:30 time frame.

"[MR. HENEGHAN]: So he would have left then prior to 8:30; is that right?

A. Well, I asked Collura what time it was when I talked to him again. I don't remember—but I don't know it was about 8:30 when the first officer left or not.

Q. Well, Officer Collura came back for the second time at 8:15?

A. Uh-huh."

Her one response to the characterization of the time frame by Collura's attorney does not undermine her overall credibility.

In a footnote, Collura states that Martinez' credibility also is weakened by her testimony at the 1980 hearing that Collura touched her after Mickow left, but before Hansen arrived, while her testimony at the second hearing suggests the violation occurred after Hansen had arrived. This contradiction, Collura contends, renders her testimony unworthy of belief. Both the board and the chief apparently concede that her testimony on this point is inconsistent, for they do not attempt to reconcile her testimony offered during the 1980 and 1983 hearings. In its decision order the board acknowledged the inconsistencies, stating that "there was some occasional confusion and some inconsistency in piecing together the many different times she was called on to answer, and what was happening at any particular moment." Nonetheless, the board concluded the inconsistencies "did not render her testimony less credible or less believable." The chief explains that Martinez was not wearing a watch and her car did not have a clock; thus, her recollection of the events is understandably imprecise. The board likewise argued that Martinez' unclear recollection during the 1983 hearing stems from the fact that the events had occurred three years earlier. Both parties contend her inability to recall a sequence of events is not impeaching in light of the testimony of both Collura and Martinez that they were together for more than one-half hour, that a citation was never issued, that Collura inquired about weapons after Mickow had left the scene and while Collura was without a back-up, that Collura introduced Mickow as holding the non-existent rank of "Lieutenant," and that Martinez left the scene crying. In light of these facts and Martinez' unwavering testimony that Collura touched her breasts, buttocks and vagina, the board's acceptance of the testimony of Martinez and disbelief of the testimony of Collura is not against the manifest weight of the evidence.

Collura also argues that the board erred in finding that Offi-

cer Collura's defense was that either Hansen or Mickow was with Collura throughout his questioning of Martinez. Instead, Collura argues his defense was that at least one officer was with him until he received the Wickes call, thereby refuting Martinez' testimony that the incident occurred prior to the Wickes call. Collura contends that the board's erroneous finding requires reversal because it undermines Collura's credibility. The chief persuasively argues, however, that Collura's voluntary statements submitted to the chief during the initial investigation suggested that at least one officer was with Collura until he left to respond to the Wickes call. Thus, evidence was before the board which supports the board's characterization of Collura's defense. Additionally, even were the board's finding inaccurate, Collura's credibility could at best be minimally affected by the finding. As its decision indicates, the board determined Martinez was truthful and Collura was untruthful based upon their entire testimonies and thus, any mischaracterization of Collura's defense is harmless error.

██ Collura further contends the board erred in its finding that "the Base again inquired about his whereabouts in checking the Wickes situation." The transcription indicated that Collura received the initial call about Wickes at 10:09.19 and was again contacted at 10:11.58. Collura maintains that the latter call was not to determine Collura's location, but rather was a followup to Collura's earlier call to the base. However, the board's inference that Collura delayed in responding to the Wickes call is supported by the transcription which shows that Collura informed the base at 10:09.34 that he was leaving for Wickes, but did not inform the base that he was at the Wickes location until 10:14.42 p.m. Collura testified his trip from the parking lot to the Wickes location took approximately one minute. Although Collura testified he was at the Wickes location for several minutes prior to his call at 10:14.42, Martinez testified Collura again requested that Martinez unzip her pants after the Wickes call. Therefore, the board's inference that Collura lingered at the scene is supported by evidence in the record.

██ Collura also asserts the board ignored the salient fact that both Hansen and Officer Ward testified the scene of the vehicle stop was well-lighted. This testimony, however, does not impeach any of Martinez' testimony. Collura implies that he would not have been able to effect the "touching" in a lighted area within the view of pedestrians. No support, however, exists in the record for Collura's implication. In fact, Mickow had earlier left the scene because of the cold, thus suggesting that the weather made unlikely any interruption of Collura's detention of Martinez by a pedestrian. In sum, Collura has

not established that any of the board's findings are against the manifest weight of the evidence.

■■ The next basis for reversal advanced by Collura is his contention that the board committed reversible error when it ruled that a statement of the chief's attorney, Thomas McGuire, made in his closing statement at the 1980 hearing did not constitute a judicial admission in the 1983 hearing. Collura asserts that the following statement of McGuire constituted a judicial admission.

> "[A]nd the touching, members of the Commission, occurred by her testimony between the time that Officer Mickow left the scene and Officer Hansen arrived at the scene."

Collura's argument fails for several reasons. Assuming, *arguendo*, that McGuire as attorney for the chief could make an admission for Martinez, McGuire's statement summarizing Martinez' testimony is less an admission than were statements found not to be judicial admissions in other Illinois decisions. For example, in *Sabo v. T.W. Moore Feed & Grain Co.* (1968), 97 Ill. App. 2d 7, 19-20, 239 N.E.2d 459, 465-66, the plaintiff sued several defendants for injuries resulting from an automobile accident. The plaintiff's attorney stated during closing argument that he was impressed with the truthfulness of one defendant, Humphreys, and believed that another defendant, Cox, was lying. Additionally, the plaintiff's attorney admitted that he could not in good conscience state Humphreys was at fault or that the truck driven by Humphreys prior to the collision had been on the wrong side of the road.

In ascertaining whether these statements constituted judicial admissions, the *Sabo* court defined a judicial admission as "'a formal act of the party or his attorney in court, dispensing with proof of a fact claimed to be true and *** used as a substitute for legal evidence at the trial.'" (*Sabo v. T.W. Moore Feed & Grain Co.* (1968), 97 Ill. App. 2d 7, 20, 239 N.E.2d 459, 465-66, quoting *Rosbottom v. Hensley* (1965), 61 Ill. App. 2d 198, 215, 209 N.E.2d 655, 662.) Employing this definition, the *Sabo* court concluded the statements of the plaintiff's attorney were not judicial admissions in *Sabo*, we conclude that McGuire's isolated statements summarizing Martinez' testimony does not constitute a binding judicial admission. See also *Bunch v. Rose* (1973), 10 Ill. App. 3d 198, 293 N.E.2d 8 (statement by plaintiff's counsel summarizing the evidence did not amount to judicial admission); *Deel v. United States Steel Corp.* (1969), 105 Ill. App. 2d 170, 245 N.E.2d 109 (statements by plaintiff's counsel during closing argument that another defendant had put up the cable, was liable for the cable, and was liable for the accident were not judicial admissions).

The two cases relied upon by Collura, *Deffler v. Loudenback* (1924), 233 Ill. App. 240, and *Kirchheimer v. Barrett* (1906), 125 Ill. App. 56, are either distinguishable or unpersuasive. *Deffler* involved an attempt to show that the adverse party's attorney at a former trial had *stipulated* to a certain fact. In *Kirchheimer*, the statement asserted to constitute a judicial admission by the appellee's attorney was that a certain document was written in his client's handwriting. In contrast, here McGuire specifically summarized Martinez' testimony and thus, he could not have intended the statement to be used "as a substitute for legal evidence at the trial." (*Sabo v. T.W. Moore Feed & Grain Co.* (1968), 97 Ill. App. 2d 7, 239 N.E.2d 459.) To the extent that *Kirchheimer* suggests a different result than we reach here, we decline to follow that case based upon the more recent authorities cited previously. Accordingly, we conclude the board did not err in ruling that McGuire's statement did not constitute a judicial admission.

■■■ The next argument advanced by Collura is that the board's refusal to grant his motion for a new probable cause hearing contravened the language in the *Kaske* decision and denied him due process of law. The language of the *Kaske* decision does not support Collura's contention. The supreme court in *Kaske* resolved Collura's appeal with the following language.

> "We also hold that the decision to discharge Officer Robert Collura by the board of fire and police commissioners of the village of Itasca cannot stand. The appellate court's order affirming the circuit court's order affirming the decision of the Board is reversed, as is the judgment of the circuit court. We remand Officer Collura's cause to the board of fire and police commissioners of the village of Itasca for a new hearing, in which any results of the police officer's polygraph examination, any opinions offered by the polygraph examiner, or any references to the polygraph examination are inadmissible as evidence." (96 Ill. 2d 298, 311-12.)

The plain meaning of the court's language is that the cause was to be remanded to the board to conduct a new hearing on the substantive merits of the charges filed against Collura. We note that Collura has not referred this court to any place in the record where he requested a new preliminary hearing at any time prior to the first meeting of the board following the remand.

More important, the board persuasively contends that Collura is not entitled to any probable cause hearing prior to a hearing on the merits of the charges. Although neither party provided the record ci-

tation to the rules of the Itasca Police Commission, the board supplied the text of the rule governing the subject of a probable cause determination and Collura has not challenged the accuracy of the board's recitation of the rule. The rule provides:

"The Board shall have the right to determine whether there is, or is not, probable cause for a hearing on a complaint and *may* conduct such informal hearings as may be necessary for such purpose." (Emphasis added.)

The term "may" as opposed to "shall" denotes a permissive and not a mandatory rule. (*McGill v. Lazzaro* (1978), 62 Ill. App. 3d 151, 152-53, 379 N.E.2d 16, 17.) The rule authorizes the board to hold informal hearings; but does not require it to do so. Although Collura asserts that the board's refusal to grant him a new probable cause hearing denied him due process, he has cited no authority except for a general citation to *Kaske, Diamond,* and the due process clauses of the Illinois and United States constitutions. None of these references provide any specific support for his constitutional argument. The nature of the board's rule authorizing but not requiring it to conduct informal hearings for the determination of probable cause does not establish a right, the denial of which contravenes the requirements of due process.

While the permissive nature of the board's own rule defeats Collura's claim to a hearing, two additional factors make unlikely his entitlement to a new probable cause hearing. First, Collura's demand for a hearing is arguably mooted by the decision of the board at the 1983 hearing that the evidence absent the polygraph results nevertheless establish his commission of the touching. The board's finding that Collura had committed the offense necessitated the finding that probable cause existed to hold a hearing. Second, although the board did not hold a hearing, Commissioner Morgan in explaining the board's decision to deny Collura a new probable cause hearing stated that the original complaint contained no reference to the polygraph and thus was not tainted. Morgan expressed his belief that probable cause had existed prior to the first hearing and also that sufficient facts existed to warrant a finding of probable cause upon remand irrespective of the polygraph results. Morgan's comments suggest the board concluded probable cause existed to hold the second hearing even though its conclusion was not reached during a second probable-cause hearing. In any event, Collura at the second hearing on the merits exercised his right to testify, to call witnesses and to present a defense; therefore, he has established no prejudice resulting from the board's denial of his motion for a second probable cause hearing.

■■ The final argument advanced by Collura is that the cause must be reversed because the trial court improperly denied his motion filed pursuant to section 3—111(c) of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 3—111(c)) for findings of fact and/or propositions of law. Both the board and the chief respond, however, that the trial court's denial of Collura's motion is not reversible error.

In support of their position, they cite *Hansell v. Department of Registration & Education* (1983), 113 Ill. App. 3d 862, 448 N.E.2d 1, for their contention that a trial court's failure to comply with the requirements of section 3—111(c) does not necessitate reversal. The plaintiff in *Hansell* filed a motion in the trial court requesting it to make findings of fact and to state the propositions of law upon which its decision was based. Instead, the trial court entered a briefly worded final order:

" 'The Court finds that the decision of Defendant is not contrary to law nor the manifest weight of the evidence. Plaintiff by participating in the hearings of September 10, 1981 may not now object to the transcript being part of this record. The Defendant Board has discretionary powers and did not abuse them. Complaint for Administrative Review denied. Cause stricken.' " (113 Ill. App. 3d 862, 865, 448 N.E.2d 1, 3.)

Emphasizing that section 3—111(c) had rarely been interpreted, the *Hansell* court stated "[n]o court of review has reversed a circuit court for failure to comply." (113 Ill. App. 3d 862, 865, 448 N.E.2d 1, 3.) Because the *Hansell* court stated the trial court had concluded the administrative decision was not against the manifest weight of the evidence and had articulated the propositions of law, it concluded no error occurred in the trial court's failure to comply with section 3—111(c).

A similar conclusion should obtain here. The trial court's order contained its finding that the board's decision was not against the manifest weight of the evidence and that Fedor's decision not to recuse herself, while perhaps not the best course of action, did not warrant reversal. Furthermore, as emphasized by the chief, Collura has articulated no prejudice resulting from the court's failure to more specifically enumerate its findings and conclusions. The record indicates that the trial judge discussed the recusal motion with counsel for all of the parties throughout 39 pages of transcript. Furthermore, Collura has not set forth any argument that he was precluded from making as a result of the denial of this motion. Therefore, any failure by the trial court to comply with Collura's section 3—111(c) motion does

not amount to reversible error.

The order of the circuit court of Du Page County is affirmed.

Affirmed.

UNVERZAGT and SCHNAKE, JJ., concur.