No. 1-96-1580
_________________________________________________________________

 IN THE
 APPELLATE COURT OF ILLINOIS
 FIRST JUDICIAL DISTRICT
_________________________________________________________________

KENNETH ANTONELLI, ) Appeal from the
 ) Circuit Court of
 Plaintiff-Appellant, ) Cook County.
 )
 v. ) 
 ) 
BOARD OF TRUSTEES OF THE HILLSIDE )
POLICE PENSION BOARD, RAYMOND T. ) No. 91 CH 10978
BISHOP, A PENSION TRUSTEE, EARL )
CISMESIA, A PENSION TRUSTEE, FRANK J. )
ALONZO, A PENSION TRUSTEE, DAVID )
KREBES, A PENSION TRUSTEE, IRV ROUT, )
A PENSION TRUSTEE, and MARTIN MUELLER, )
A PENSION TRUSTEE, ) Honorable
 ) Thomas P. Durkin,
 Defendants-Appellees. ) Judge Presiding.
_________________________________________________________________


 

 JUSTICE GALLAGHER delivered the opinion of the court:

 Plaintiff Kenneth Antonelli appeals from the judgment of the
circuit court affirming an administrative order of the Board of
Trustees of the Hillside Police Pension Board (board) revoking
his disability pension. He contends that the board's termination
of his benefits was against the manifest weight of the evidence. 
 Plaintiff, a police officer with the Hillside Police
Department, was granted a duty-related disability pension in
March 1981. At a hearing before the board in August 1991
plaintiff appeared without counsel and acknowledged that he had
not submitted the most recent required annual medical report. 
Plaintiff stated that he had degenerative disk disease and was
still experiencing lower back pain for which he now took Tylenol
or Motrin. He played no sports and worked part-time from his
home preparing Medicare and supplemental insurance forms for
senior citizens. The hearing was continued to permit plaintiff
to visit his own physician and provide the board with medical
documentation to support his claim. 
 At the time the board had before it reports by two
physicians who had examined plaintiff. In a March 1990 report by
Dr. John Dwyer, plaintiff was given no restrictions for sitting,
standing, walking or motor vehicle operation. He was restricted
from bending, stooping or squatting repetitively and restricted
from lifting more than 20 pounds with "occasional" lifting up to
45 pounds. Dr. Dwyer recommended that plaintiff be assigned to
"light duty" which could be modified upward as plaintiff's weight
tolerance improved. The doctor's report was based upon a low
back evaluation by a physical therapist. 
 The board also had a May 1990 report by Dr. David Spencer
who stated that plaintiff's x-rays were normal and that plaintiff
did not report significant pain or disability. Plaintiff had
refused to have a lumbar CT scan, which the doctor had
recommended because there had been no diagnostic tests for three
years. In a followup report at the end of August 1991, Dr.
Spencer reported that plaintiff was not disabled to perform the
duties of a policeman, and he prescribed no medication. 
 In September 1991 plaintiff submitted a report by Dr.
William Dobozi who stated that plaintiff reported "more pain in
his lower back and recurrence of his sciatic pain into his left
leg and left foot" and that the pain was worse than previously
experienced. According to Dr. Dobozi, plaintiff's sciatic type
symptoms prevented him from doing heavy work or police work, and
no change in plaintiff's condition warranted his return to work. 
 On October 16, 1991 the board issued its order rescinding
plaintiff's disability pension. It found that plaintiff had
failed to produce any evidence to support his continuing
disability. It acknowledged Dr. Dobozi's report but stated that
Dr. Dobozi had relied solely upon plaintiff's subjective
complaints of pain. Plaintiff then filed a complaint requesting
administrative review. 
 After a hearing, the circuit court remanded the case to the
board for further administrative proceedings to allow
introduction of additional evidence and retained jurisdiction
over the case. 
 Plaintiff was again examined by the board's physicians and
permitted to take their evidence depositions. He also visited
Dr. Dobozi several times, and Dr. Dobozi's evidence deposition is
part of the record. The report of Dr. Ronald Cheff, who examined
plaintiff on October 25, 1991, is also included in the record. 
Dr. Cheff reported that plaintiff complained of persistent pain
down his leg and pain to the left lumbar region. In his opinion
plaintiff suffered from an L4-L5 root lesion on the left side. 
His report was supported by an EMG study. `
 When Dr. Dobozi examined plaintiff in February 1993,
plaintiff still continued to complain of lower back pain
radiating into his left leg, and plaintiff stated that any
activity increased the pain. The doctor confirmed that the 1991
EMG showed a nerve root lesion which was the same as that shown
in the 1981 EMG. In Dr. Dobozi's opinion, plaintiff was not able
to return to his duties as a policeman. Dr. Dobozi's examination
of plaintiff on January 18, 1994, which was supported by current
x-rays, was essentially the same. 
 In his deposition on March 10, 1994, Dr. Dobozi explained
that plaintiff probably had a bulging disk that pressed on his
sciatic nerve producing pain down his leg. The disk was not
herniated. Dr. Dobozi also believed that plaintiff suffered from
lumbosacral radiculitis, an inflammation of the nerve root which
referred pain into the leg, and radiculopathy, weakness in the
muscles supplied by the damaged nerves. In Dr. Dobozi's opinion,
plaintiff could forego surgery as long as he performed only light
activities, such as desk work. Surgery was no guarantee that his
pain would be alleviated and physical therapy was temporary and
not curative. In Dr. Dobozi's opinion, plaintiff's symptoms
required conservative care in an effort not to herniate the
bulging disk. For this he had prescribed anti-inflammatory and
pain medications. 
 Another examination by Dr. Dobozi was conducted on February
16, 1995. It revealed that plaintiff now suffered from a
degenerative disk and that the injury was permanent. 
 Dr. Spencer evaluated plaintiff in February 1993 and June
30, 1994. He noted that plaintiff was having psychiatric
problems but was in no discomfort with respect to his lower back
condition. At his deposition on May 16, 1995, Dr. Spencer
testified that the board had not forwarded any diagnostic records
for his evaluation of plaintiff. He also testified that he did
not make any specific observations about repetitive bending and
lifting because repetitive work was not within a policeman's job
description. His opinion was based upon his understanding of
what a policeman routinely did. 
 Dr. Spencer recalled recommending that plaintiff undergo a
CAT scan which would show any evidence of nerve route compression
due to tumors, infection, fractures, spinal stenosis, and disk
herniation. An EMG identified nerve dysfunction. In reviewing
Dr. Cheff's report, Dr. Spencer testified that a root lesion did
not necessarily mean that plaintiff had radiculitis, and
radiculitis referred to sciatic symptoms of pain, tingling and
numbness. 
 In reviewing Dr. Dobozi's evaluations of plaintiff for the
board over the years, Dr. Spencer testified that it was possible
for plaintiff to have intermittent sciatic pain. Referring to
the 1981 EMG the doctor agreed that plaintiff showed nerve damage
at the base of his spine and that the cause of the lesion was
probably a disk herniation which could cause pain during
activities. 
 Dr. Spencer was also shown plaintiff's 1995 MRI. He stated
that the MRI confirmed plaintiff's disk degeneration "with a
protrusion of disk herniation." In his opinion, plaintiff's 1980
trauma could have caused a disk herniation which in turn could
have caused the L4-L5 root lesion, but plaintiff was still fit
for police work because his was not an unusual MRI scan for a 40-
year-old man. Dr. Spencer also stated that disk herniations
shrink and resorb in time, and a herniated disk does not stay
symptomatic forever. He discounted plaintiff's complaints of
pain and suggested that plaintiff's functional capacity indicated
that he should have no trouble with any activity as long as it
was not repetitive. Dr. Spencer stated that he essentially
agreed with Dr. Dobozi who ultimately determined that plaintiff
could not perform heavy duty work. This was because Dr. Spencer
believed that police work was not heavy duty and did not involve
repetitive activities. He also opined that plaintiff's back
condition was not so fragile that if he were involved in an
altercation he would be any more likely to have a back injury
than anyone else, that plaintiff could aggravate his back
temporarily but that it would resolve without surgery. 
 Dr. Ryan testified during his May 1995 deposition that in
his two examinations of plaintiff he could not find any objective
evidence for plaintiff's back pain and that in his opinion
plaintiff did not have a clinically permanent partial disability. 
He was unable to produce pain in plaintiff upon manipulation. In
Dr. Ryan's opinion, plaintiff was at the third or end stage of
spinal diagnosis. The first stage was dysfunction where the
spine was nearing degeneration and the individual experienced
pain. The second state was instability with more severe pain
because the spinal segment was unstable. The last stage brought
stability and less sciatic pain. When Dr. Ryan saw plaintiff in
1993 and 1994, he believed that plaintiff had stabilized. 
 Dr. Ryan also examined plaintiff's 1995 MRI results and Dr.
Dobozi's letter. The results did not change his opinion of
plaintiff's status. The MRI showed a degenerated disk which had
produced pain symptoms in the past and an MRI showed disk
degeneration better than a CAT scan. In evaluating Dr. Dobozi's
report he stated that Dr. Dobozi did not provide enough
documentation to verify his contention that plaintiff was
permanently disabled. He also confirmed Dr. Spencer's opinion
that sciatic pain was intermittent, but Dr. Ryan believed that
police work was heavy work. 
 At the second hearing before the board on September 14,
1995, plaintiff testified that his former duties as a policeman
had required him to bend and squat and that occasionally he
became physically involved with suspects. He now was employed as
a medical courier and spent approximately 20 hours per week in a
car. 
 The board then issued its second decision. It stated that
plaintiff had failed to meet his burden of proof, he was not
disabled and there was no reason for the board to change its
earlier decision. It certified him fit for duty giving greater
weight to the medical reports of Drs. Dwyer, Spencer and Ryan
than to the report of Dr. Dobozi. The board also noted that the
only time plaintiff saw Dr. Dobozi was when he needed a letter to
submit to the board. Plaintiff's pension was revoked as of
October 16, 1991, the date of the first decision. The circuit
court affirmed the board's decision stating that it could not
reweigh the evidence. Plaintiff appealed. 
 Plaintiff contends that the board's 1995 decision is against
the manifest weight of the evidence. The findings and
conclusions of the administrative agency on questions of fact are
held to be prima facie true and correct, and such findings will
be upheld on review unless they are against the manifest weight
of the evidence. Abrahamson v. Illinois Department of
Professional Regulation, 153 Ill. 2d 76, 88 (1992). The board's
decision should not be set aside by the reviewing court unless an
opposite conclusion is clearly evident. Whelchel v. Edgar, 195
Ill. App. 3d 406, 409 (1990). The function of the reviewing
court is not to reweigh the evidence but to determine whether the
agency's decision is against the manifest weight of the evidence. 
Peterson v. Board of Trustees, DesPlaines Firemen's Pension Fund,
54 Ill. 2d 260, 262-63 (1973). An administrative decision is not
contrary to the manifest weight of the evidence merely because an
opposite conclusion is reasonable or because the reviewing court
might have ruled differently. Collura v. Board of Police
Comm'rs, 135 Ill. App. 3d 827, 838 (1985). 
 Here, the medical evidence was as follows: 
March 1990 - Dr. Dwyer found that plaintiff could return to light
 duty with occasional lifting up to 45 pounds.
May 1991 - Dr. Spencer found that plaintiff had no significant
 back problems and he concluded that plaintiff could return
 to police duties. 
October 1991 - Dr. Cheff reported that plaintiff had a nerve root
 lesion. His report was supported by a current EMG. 
February 1993 - Dr. Dobozi confirmed that plaintiff's nerve root
 lesion was the same as in 1980. Plaintiff should not return
 to work. He relied on the 1991 EMG. 
February 1993 - Dr. Spencer reaffirmed that his examination of
 plaintiff failed to reveal any abnormalities of the spine
 and plaintiff could return to police work. 
May 1993 - Dr. Ryan noted that plaintiff appeared healthy, had no
 permanent disability and should be able to return to work.
January 1995 - Dr. Dobozi again noted plaintiff's persistent pain
 and stated that plaintiff should not return to police
 duties. This report was supported by current x-rays. 
July 1994 - Dr. Spencer found that plaintiff's neurologic and
 orthopedic examinations were normal.
July 1994 - Dr. Ryan found no objective evidence of pain and
 concluded that plaintiff could return to work. 
June 1995 - Dr. Dobozi stated that plaintiff still complained of
 pain and suffered from a degenerative disk, and his
 injury was permanent. He relied on a recent MRI. 
 Only Dr. Dobozi concluded that plaintiff should not return
to police work. Otherwise the doctors agreed that plaintiff
suffered from a nerve root lesion which caused him sciatic and
other pain. Drs. Spencer and Ryan both believed that plaintiff
had "stabilized," that his pain would come and go but that he
could perform police work. Dr. Dobozi thought that police work
was "heavy work"; Dr. Spencer thought it was light duty and that
an altercation would not exacerbate his condition permanently. 
Under Section 3-116 of the Pension Code, if a police officer is
found upon medical examination to have recovered from a
disability, the board shall certify to the chief of police that
the officer is not longer disabled. 40 ILCS 4/3-116 (West 1994). 
We must conclude that the board's determination was not against
the manifest weight of the evidence and the circuit court did not
err in affirming the board's decision. 
 Accordingly, the judgment of the circuit court is affirmed.
 Affirmed. 
 BUCKLEY, J. and O'BRIEN, J. concur.